DETROIT SOUTHERN RAILROAD CO. *v.* MALCOMSON.

1. SALES—CONTRACTS—CONSTRUCTION—PASSING TITLE.

A contract, by which a coal company agrees to furnish a dealer all the coal that may be required by the latter for the use of an illuminating company "of Detroit," for certain purposes, at "the following prices, f. o. b. Michigan Central Railroad, viz., "etc., requires the delivery of the coal on the track of such railroad company at Detroit, and, under it, title to coal shipped does not pass to the dealer until its arrival at the designated point.

2. SAME.

Postal cards sent by the coal company to the dealer reading: "In our office. We ship this day on your account," followed by the numbers of the cars, number of tons, the grade, the route, and the words: "Remarks—Weight to follow," etc., signed by the coal company, are not inconsistent with a construction of the contract that it requires delivery on the tracks of the railroad company at Detroit, such cards being mere notices to defendant that the coal company, in accordance with the contract, shipped the coal for delivery to defendant, free on board the cars at Detroit.

Error to Wayne; Hosmer, J. Submitted January 10, 1906. (Docket No. 50.) Decided May 24, 1906.

Assumpsit by the Detroit Southern Railroad Company against Alexander Y. Malcomson for freight charges. There was judgment for plaintiff on a verdict directed by the court, and defendant brings error. Affirmed.

*Anderson & Rackham,* for appellant.

*Dickinson, Stevenson, Cullen, Warren & Butzel,* for appellee.

BLAIR, J. Plaintiff sued defendant for the freight upon certain cars of coal shipped to defendant over plaintiff's railroad by the Superior Coal Company, of Wellston, Ohio, under a contract containing the following clauses:

## "CONTRACT WITH DEALERS.

"Made at Detroit, this 1st day of July, 1901, between the Superior Coal Co., Wellston, O., the first party, and A. Y. Malcomson, of Detroit, Mich., the second party.

" Said first party agrees to furnish all the coal that may be required by said second party, for the use of The Edison Illuminating Co., of Detroit (with whom the said second party has annual contract), for steam or manufacturing purposes, until the 30th day of June, 1902, at the following prices f. o. b. Mich. Cent. R. R., viz.

"From July 1st, 1901, until June 30th, 1902.    *    *    *

" Mine run, per ton, $2.05 net.    *    *    *

" The said second party agrees to purchase from said first party all the mine run coal they may require for the purpose aforesaid, until said 30th day of June, 1902, and to pay for same on or before the 25th day of each month for all coal shipped during the previous month. Mine weights to govern settlements."

Defendant having given notice of set-off, based, among other things, upon the confiscation by plaintiff of numerous cars of coal shipped under said contract, before they arrived at the Michigan Central Railroad tracks, waived the benefit of his plea of the general issue, admitted the plaintiff's claim, and assumed the affirmative of the issue upon his notice of set-off. The court held that defendant's contract provided for a delivery of the coal on the Michigan Central tracks at Detroit, and that the coal having been confiscated before it was so delivered, he had no title thereto, and could not recover for its loss. In accordance with this view of the contract, a verdict was directed for plaintiff.

Defendant contends that the court erred in his construction of the contract; that while the letters, f. o. b., usually import delivery at the point designated, it is apparent that, in the contract in question, delivery of the coal to the plaintiff railroad company was intended by the parties to be a delivery to the defendant, and it is said:

" There are two features in this contract strongly indicating this intention: *First.* 'Mine weights to govern settlement.' This language means that defendant had to

pay the Superior Coal Company for this coal on the basis of the weights of the coal at the mines where it was delivered on cars for transportation to defendant.  *  *  * *Second.* The contract provides:

" 'Said second party agrees to purchase from said first party all mine run coal * * * and to pay for same on or before the 25th day of each month for all coal shipped during the previous month.'

"The words, 'for all coal shipped during previous month' are also significant, we contend, in that they plainly show when the parties to the contract themselves regarded the responsibility of the Superior Coal Company for the coal shipped under it at an end, and that shipment and delivery by the Superior Coal Company to defendant were concurrent and not separate acts."

It is also contended that the letters, f. o. b., are used—

"To qualify, fix, and determine a certain essential feature of the contract, viz.: the price. The language, 'prices f. o. b.' was not used unadvisedly by the parties to the contract. These words are not synonymous with 'delivery f. o. b.' nor with 'f. o. b.' standing by itself. In interpreting the language, therefore, it should be given that interpretation which the parties themselves sought to put upon it, viz.: The basis of price of the coal, and not the interpretation which plaintiff's counsel and the court below sought to arbitrarily place upon it, viz.: The place of delivery of the coal. Particularly is this so when an entire reading of other portions of the contract, as we have seen, clearly show that a contrary intention as to place of delivery between the parties existed. The language related and was intended by the parties to it to relate entirely to prices, and not to indicate the place where title to the coal passed. It is equivalent to the following: 'At the following prices less freight to Michigan Central R. R.'"—citing *A. J. Neimeyer Lumber Co.* v. *Railroad Co.*, 54 Neb. 327 (40 L. R. A. 537).

The contract is clear and unambiguous and was properly construed by the court. The words, "free on board," in such contracts have acquired a settled judicial meaning. *Vogt* v. *Schienebeck*, 122 Wis. 491 (67 L. R. A. 756).

There is nothing in the clauses referred to by defendant's counsel or elsewhere in the contract which militates

against the usual meaning of the words; nor was there any evidence outside of the contract to warrant a different construction.   The opinion of Commissioner Ragan in the Nebraska case, cited supra, supports defendant's contention that the letters, f. o. b., relate to the price merely, but none of the other members of the court concurred with him upon this point, and Norval, J., dissented in an able opinion supported by the citation of numerous authorities. Harrison, C. J., Sullivan, J., and Irvine and Ryan, CC., concurred—

"In the conclusion reached by Commissioner Ragan, on the ground that, conceding, for the purposes of this case, that the use of the expression 'Prices f. o. b. Omaha' might of itself afford a presumption that the delivery was to be made at Omaha, and that title should there pass, the other evidential facts were sufficient to ground an inference that title should pass at the place of shipment, and the question being one of fact, the finding is sustained by the evidence."

As above stated, there are no such evidential facts in this case requiring a submission of the question to the jury. *Althouse* v. *McMillan*, 132 Mich. 145, is not in conflict with this conclusion.   In that case "the correspondence contemplated, and there actually was in this case, in accordance therewith, a bill of lading procured, which, with the invoice attached, was immediately transmitted to the purchaser.   This transfer of the bill of lading passed the title to the property in controversy," citing cases.

In the case at bar there was no bill of lading transmitted to defendant.   It is claimed that the postal cards sent to defendant, of which the following is an example, were equivalent to a bill of lading, viz. :

"Mine weights govern settlements.   All bills due tenth of each month.

"Jackson, Ohio, 10 / 28, 1901.
"A. Y. M.

"In our office we ship this day on your account:

| Initial. | Car No. | Ton. | Grade. | Route. | 186. |
|----------|---------|-------|--------|--------|------|
| O. S. | 4324 | 34.50 | Lp. | Dt. | 5 |
|  | 6534 | 32.50 | " | " | 6 |
|  | 6753 | 31.00 | " | " | 7 |
|  | 5160 | 31.50 | " | " | 8 |
|  | 5083 | 32.00 | " | " | 9 |

"Mine No. 3.
" Remarks:   Weights to follow.
"Yours truly,
"SUPERIOR COAL COMPANY."
Stamped:   "Received Oct. 30, 1901.   Ansd. ———."

These postal cards were in nowise inconsistent with the construction we have placed upon the contract, and, being construed in harmony with it, were mere notices to the defendant that the coal company, in accordance with the contract, had shipped the coal for delivery to him free on board the cars at Detroit.

The judgment is affirmed.

CARPENTER, C. J., and McALVAY, GRANT, and MONT-GOMERY, JJ., concurred.