LODWICK LUMBER CO. *et al.* v. E. A. BUTT LUMBER CO.

No. 1744.  Opinion Filed April 15, 1913.

(131 Pac. 917.)

1.  **SALES—Place of Delivery.** In the absence of any contrary provision in a contract of sale, the place of delivery is the place where the goods are located when sold, and that, too, whether they are actually or only potentially there.

2.  **SAME—Action for Price—Evidence of Delivery.** Where property is to be delivered at the place where it is located at the time it is sold, the seller, before he can recover his pay, is bound to prove delivery at that place.

3.  **SAME—Contract—Place of Delivery.** Plaintiff, a lumber company with its mills at A., contracted to sell and deliver to defendant, a lumber company with its yards at W., a car of lumber. **Held,** the contract being silent upon the subject, that the place of delivery is upon the car at A.

4.  **SAME—Performance.** Where defendant, a lumber company with its yards at W., ordered of plaintiff, a lumber company with its mills at A., a car of lumber to be delivered at that place, **held,** that defendant was not bound to accept delivery of the lumber from another lumber company at another place.

(Syllabus by the Court.)

Williams, J., dissenting.

*Error from District Court, Garvin County;*
*R. McMillan, Judge.*

Action by the Lodwick Lumber Company and the Atlanta Lumber Company against the E. A. Butt Lumber Company, composed of E. A. Butt and I. A. Lewis. Judgment for defendants, and plaintiffs bring error. Affirmed.

*Blanton & Andrews,* for plaintiffs in error.

*Geo. I. Jordan* and *J. B. Thompson,* for defendant in error.

TURNER, J.   On March 2, 1908, in the district court of Garvin county, the Lodwick Lumber Company, a corporation, sued E. A. Butt and I. A. Lewis, partners as E. A. Butt Lumber Company, for a sum certain, the agreed price of a car of lumber which defendants had refused to accept.   Later, by leave of court, it filed a second amended petition, in which Atlanta Lumber Company joined as a party plaintiff.   Said petition substantially states:   That plaintiffs are corporations engaged in the manufacture and sale of lumber at certain points in Texas; that defendants are engaged in the sale of lumber in Wynnewood and Paoli, in Garvin county, Okla.   That while so engaged defendants sent plaintiff Atlanta Lumber Company this telegram:

"Wynnewood, I. T. 10—28—07.   Atlanta Lbr. Co., Atlanta, Tex.   Quote car 12 inch No. 3 boards 27 rate, E. A. Butt Lbr. Co."

To which Atlanta Lumber Company answered by telegram:

"Oct. 29, 1907.   To E. A. Butt Lbr. Co., Wynnewood, I. T. 14.50 20 cent rate 12 inch No. 3.   Atlanta Lbr. Co."

And to which E. A. Butt Lumber Company replied:

"Wynnewood, I. T. 10—30—07.   Atlanta Lbr. Co., Atlanta, Tex.   Ship car No. 3 boards to Paoli.   Rush.   E. A. Butt Lbr. Co."

That by the words in the telegram, *supra,* which read, "14.50 20 cent rate," it was intended by the parties in interest that the lumber would be billed to defendants at the invoice price of $14.50 per thousand, and that in settlement therefor defendants might deduct from said price twenty cents per hundredweight for all the lumber contained in the car.   That the freight rates upon a car load shipment of lumber from Atlanta and Lodwick to Paoli were, at that time, and are the same.   That pursuant to said contract, the next day the Atlanta Lumber Company, at Atlanta, Tex., directed the Lodwick Lumber Company, at Lodwick, Tex., to ship to defendants the car of lumber so ordered.   That acting thereon said company prepared the same for shipment and loaded it on board car at Lodwick and delivered it to the Texas Southern Railroad Company for transportation to defendants at Paoli, then Indian Territory, as so directed, and also sent invoice

and bill of lading. That said lumber was of the value of $376.64, for which, under the terms of the contract, plaintiffs are entitled to recover $220.04. And it prayed judgment for that amount.

For answer, after general denial, defendants, in effect, admitted the contract with Atlanta Lumber Company to be as alleged, and charged that, without their knowledge or consent, the Atlanta Lumber Company had turned over the order for the lumber to the Lodwick Lumber Company, its coplaintiff; that they had never at any time had a contract therefor with that company, and did not know that said order had been turned over to the Lodwick Lumber Company prior to their telegram to Atlanta Lumber Company canceling the order; that immediately upon receipt of the bill of lading therefor defendants returned the same to Lodwick Lumber Company and refused, and still refuse, to accept the lumber, on the ground that no contract existed between them and the Lodwick Company with reference thereto, and ask to be discharged, etc. After reply filed, in effect a general denial, there was trial to a jury and, at the close of plaintiffs' testimony, a demurrer to the evidence, which was sustained, and judgment for defendants rendered and entered upon a directed verdict, and plaintiffs bring the case here, assigning that the court erred in sustaining the demurrer.

There is no conflict in the testimony. To maintain the issues on the part of plaintiffs, the Atlanta Lumber Company, after introducing in evidence the three telegrams set forth in the petition as constituting the contract, proved: That on the day of the sending of its answer quoting the price of lumber, and before receiving defendants' telegram, *supra*, in reply thereto, it wrote to defendants at Wynnewood thus:

"We are today in receipt of your telegram as follows: 'Quote car twelve inch boards, twenty cent rate.' We have quoted you as follows: 'Fourteen fifty twenty cent rate No. three. * * *' "

That in reply to said telegram, and evidently before receiving said letter, defendants wired: "Ship car No. 3 boards to Paoli Rush"—as stated, and on the next day wrote the Atlanta Lumber Company thus:

"We wired you to ship 1x12 No. 3 boards to us at Paoli, I. T., as per price made in message. We are wanting an especial

quick shipment on this car and will appreciate it if you will get it out quick."

That on the same day the Atlanta Lumber Company wrote the Lodwick Lumber Company:

"We are herewith inclosing you telegram ordering car of No. 3 boards for E. A. Butt Lbr. Co., Paoli, I. T. Our quotation was $14.50 on 20c. rate, being $16.25 on 27c. rate which rate applies. You will invoice direct to E. A. Butt Lbr. Co. at Wynnewood, and credit us with $5.00. * * * (Have written them you held the order, and you would handle direct to them as quick as car could be had.)"

Whereupon that company proceeded to load the car, and while so doing the Atlanta Company received from defendants a letter, dated November 4, 1907, which read, "Please cancel our order for No. 3 boards as we want a quick shipment and we asked for a price delivered on 27c. rate and suppose message was copied wrong to you," and at once telephoned the Lodwick Company, 45 miles away, to cancel the order, but which was not done, for the reason that by that time the car was loaded; whereupon, and upon being so informed, the Atlanta Company wired defendants, "Number three boards loaded car twenty one six fifty seven can't cancel," and on the same day wrote them:

"We have yours of November 4th, requesting us to cancel your order for car of twelve-foot boards. We immediately 'phoned the mill, and they advised us this order had already been loaded in car K. C. S. No. 21657. Therefore, we wired you giving car number, and advised we could not cancel, which we now beg to confirm. They will forward invoice & B—L promptly."

The same day defendants wrote the Atlanta Company:

"Your message recd. We had reordered car No. 3 boards but have asked the mill to cancel and if not shipped they of course will do so, but we will only accept this car delivered on 27c. rate at $14.50 the price you quoted. As we asked prices by wire of several mills and all of them yours included delivered on a 27c. rate."

The next day that company answered defendants thus:

"We have yours of the 6th regarding car of No. 3 boards, and will state that we quoted you in our telegram on a 20c. basis and following it up by our letter. We also affirmed it on 20c. basis and not $14.50 on 27c. rate. We refer you to our letter and

telegram of October 29th, quoting you price. We mailed this order direct to the Lodwick Lbr. Co., on the same basis, and they 'phoned us yesterday, at the time we sent you telegram giving car number, that this car was loaded, and is no doubt now well on its way towards destination. We also wrote you on the 31st ult. that we had placed this car with the Lodwick Lbr. Co., Lodwick, Texas, and if you had occasion to refer to the order to write these people. We are sorry that we were unable to cancel the order, but as stated above." (There is a total lack of other evidence as to the existence or contents of said letter of the 31st ult.)

When defendants refused to accept and pay for the lumber, this suit was brought. When, on October 28, 1907, defendants wired the Atlanta Lumber Company, "Quote car twelve inch No. 3 boards 27 rate," the Atlanta Company should have wired back a quotation as requested, or not at all. Instead of so doing it wired, "$14.50 twenty cent rate 12 inch No. 3," and followed it up that same day with a letter reciting the message. As the twenty-cent rate thus offered was $1.75 higher to defendants on the 1,000 feet than the 27-cent rate inquired about, defendants need not have made the order; but when, before receiving the letter, they did so by sending a reply to said message, which read: "Ship car No. 3 boards to Paoli. Rush"—the minds of those parties met in the contract of sale set forth in the petition as evidenced by the three telegrams. As there is neither allegation nor proof that the Atlanta Lumber Company, in making this contract, was acting for the Lodwick Lumber Company as its undisclosed principal, or that the contract when made was assigned by it to the latter company, the court did right to sustain a demurrer to the evidence, so far as the latter company is concerned. This for the reason that no privity is shown to exist between that plaintiff and defendants. Nor can the Atlanta Lumber Company recover on the contract alleged, for the reason that before it can recover it must plead and prove a delivery of the property at the place where the lumber was sold, which was Atlanta, on the Texas Pacific Railway, and not Lodwick, on the Texas Southern. 24 Am. & Eng. En. Law, 1069. This was a condition precedent to its right of recovery, and was, in effect, the holding of the court when he sustained a demurrer to the evidence.

In *Drumm-Flato Comm. Co. v. R. C. Edmisson,* 17 Okla. 344, 87 Pac. 311, the court, in the syllabus, said:

"Where a contract for the sale of personal property is silent as to the place of delivery, the law will presume that the property is to be delivered at the point where it is located at the time the contract is entered into."

In *Salmon v. Helena Box Co.,* 147 Fed. 408, 77 C. C. A. 586. Adams, Circuit Judge, said:

"In the absence of any contrary provision found in the contract for delivery, the general rule fixing the place of delivery at the place where the goods are located when sold, must prevail." —citing Benjamin on Sales, sec. 682; *Hatch v. Oil Co.,* 100 U. S. 124, 134, 25 L. Ed. 554. The same is true where the place of delivery is prescribed in the contract.

In *Hatch v. Oil Co., supra,* after announcing the doctrine, *supra,* the court said:

"Decided cases to that effect are numerous; but the rule is universal that if a place of delivery is prescribed as a part of the contract the vendee is not bound to accept a tender of the goods made in any other place, nor is the vendor obliged to make a tender elsewhere. Story, Sales (4th Ed.), sec. 308. Where, by the terms of the contract, the article is to be delivered at a particular place, the seller, before he can recover his pay, is bound to prove the delivery at that place. *Savage Manuf. Co. v. Armstrong,* 19 Me. 147."

And so, whether the place of delivery is prescribed in the contract or not, we hold that when plaintiff wired back quotations which were accepted by defendants by wire, thus: "Atlanta Lbr. Co., Atlanta, Texas. Ship Car No. 3 boards to Paoli. Rush"—the contract thus closed required the Atlanta Lumber Company to ship the lumber from its mills at that place, as the place of delivery to defendants upon the car.

*Salmon v. Helena Box Co., supra,* was a suit at law by the Helena Box Company against Salmon & Co. to recover damages for the breach of an executory contract for the sale of lumber, and to recover a balance for lumber sold and delivered. There was no dispute as to the terms of the contract, which was in the shape of a letter addressed to the box company operating two mills at or near Helena, Ark. It read:

"You may enter our order for the following cottonwood lumber: [Here follows a description of 4,000,000 feet of different grades and sizes of common commercial lumber and the agreed price for each kind.] All of the above on the Helena, Ark., rate of freight. [Here follows a description of 1,000,000 feet more of such lumber, and its price.] To be delivered on Cincinnati, Ohio, freight rate. * * * We can start shipping on the above at once, and understand that you will be in a position to ship us from 40 to 50·cars per month, in accordance with shipping directions. Shipments to be 'made in accordance with instructions, as given by us from time to time. [Signed] Hamilton H. Salmon & Co. Accepted: Helena Box Company, by H. W. Mosby, Secretary."

The question at issue was, Which party had breached the contract? and the court instructed in the alternative on the measure of damages. Among other things, in passing upon the instructions involving that question, the court held in effect that, as no contrary provision was found in the contract, Helena was the place of delivery; that being the place where the lumber was located when sold. And this is the rule, whether the articles sold are actually or only·potentially there.

*Janney et al. v. Sleeper,* 30 Minn. 473, 16 N. W. 365, was an action to recover the price of glass alleged to have been sold and delivered to the defendant in Minneapolis. The defense was that the sale required delivery at Brainerd, and that the plaintiffs had failed to make delivery at that place. It appeared upon the trial that plaintiffs had shipped the glass to defendant by rail, and that it had been broken from Minneapolis to Brainerd. There was a verdict for plaintiff, and defendant appealed. After declaring the burden of proof to be upon the defendant to show that by the terms of the contract the glass was to be delivered to him at Brainerd, and not in the car at Minneapolis, as understood by the plaintiffs, the court said:

"If no place be designated by the contract, the general rule is that the articles sold are to be delivered where they are at the time of the sale. The store of the merchant, the shop of the manufacturer, and the farm of the farmer, at which the commodities sold are deposited or kept, must be the place of delivery, when the contract is silent upon the subject; at least, when there are no circumstances showing that a different place was intended.

This is a rule of construction predicated upon the presumed understanding of the parties when making the contract. Benjamin on Sales, secs. 1018, 1022; 2 Chitty on Cont. 1201, 1202; 2 Kent, 505; *Middlesex Co. v. Osgood*, 4 Gray [Mass.] 447; *Smith v. Gillett*, 50 Ill. 290; *Hamilton v. Calhoun*, 2 Watts [Pa.] 139; *Lobdell v. Hopkins*, 5 Cow. [N. Y.] 516; *Rice v. Churchill*, 2 Denio [N. Y.] 145; *Wilmouth v. Patton*, 2 Bibb [Ky.] 280; *Sousely v. Burns*, 10 Bush [Ky.] 87. This rule is not changed by the fact that plaintiffs did not have the goods on hand at their place of business at the time of the sale, but had to procure them elsewhere in order to fulfill their contract. Potentially and prospectively the goods were as if then situate in their store at Minneapolis. Hence, in the absence of any evidence as to the place of delivery, it would be presumed to be at Minneapolis. To overcome this presumption, some evidence would be required tending to show that some other place was agreed upon. This was, in effect, all that the language of the court implied when he instructed the jury that the burden of proof was upon defendant to show that the goods were to be delivered at Brainerd, and not Minneapolis."

The reason for this is apparent; for title will pass to the purchaser if the property is delivered at the place designated in the contract, thereby enabling him to sue in damages for loss or injury thereto growing out of the negligence of the carrier. If attempted to be delivered elsewhere, title to him will not pass, and such right of action would be in the seller. Besides, delivery at the place designated in the contract would vest in the buyer an insurable interest; otherwise not. Hence the buyer has a right, with or without assigning a reason therefor, to insist upon this condition precedent to a right of recovery, as here; and without pleading and proving it plaintiff cannot recover.

In *Filley v. Pope et al.*, 115 U. S. 213, 6 Sup. Ct. 19, 29 L. Ed. 372, two citizens of New York, partners as Thomas J. Pope & Bros., sued Filley, a citizen of Missouri, in damages upon a written contract of sale, whereby they sold him 500 tons of pig iron at so much per ton upon delivery of the iron to him in bond at New Orleans, iron to be shipped from Glasgow, Scotland; delivery and sale to be subject to ocean risks. The note and memorandum of sale was duly accepted and set forth in the petition. The petition alleged that, pursuant to the terms of the contract,

the iron was shipped from Glasgow to New Orleans, which, upon its arrival, they offered to deliver to defendant in bond at that port, and upon his refusal to receive it plaintiffs were forced to sell it at a loss. The answer admitted the contract and refusal to accept, but denied the other allegations of the petition, and alleged, among other things, as a ground for the refusal and in defense of the action that plaintiffs had failed to ship the iron from Glasgow. After reply filed there was trial, at which the evidence tended to prove that:

"Immediately after making this contract, the plaintiffs, by telegraph, bought the iron of John Anderson of Glasgow, and requested him to ship it to New Orleans. The iron was then at the works of the Shott's Iron Company in Scotland, equidistant and equally accessible by railway from the ports of Glasgow on the west coast and of Leith on the east coast; and such iron was sometimes shipped from Glasgow and sometimes from Leith. Anderson at once made diligent inquiry and efforts to secure transportation from Glasgow, and from Leith, and from other Scotch ports, to New Orleans, but, owing to the great scarcity of ships at that time, could only secure one vessel, the barque Alpha, which was then discharging her cargo at Leith. This vessel he chartered on February 23, 1880, three days after the contract in question was made at St. Louis. No vessel or transportation could be obtained from Glasgow to New Orleans then or for weeks afterwards. The iron was sent down from the works of the Shott's Iron Company to Leith as fast as the barque could receive it. With all speed she discharged her cargo, took in the iron, and sailed from Leith for New Orleans, where she arrived about May 26th. The distance by sea was greater from Leith to New Orleans than from Glasgow to New Orleans. If the Alpha had come round to Glasgow and shipped the iron there, it would have taken from 6 to 26 days, according to the winds, and she would have had to take in ballast at Leith and discharge it at Glasgow."

Upon this state of facts the trial court, among other things, instructed the jury that the provision in the contract that the iron was to be shipped from Glasgow was not material, "* * * and that if the jury found that it was impossible for the plaintiffs to obtain a vessel from Glasgow, and that it was practicable to obtain one from Leith, and that shipment from Leith was a more expeditious way of getting the iron to New

Orleans than waiting for a vessel from Glasgow would have been, then the plaintiffs were justified in shipping the iron from Leith instead of from Glasgow." But the Supreme Court held not so, and said:

"The contract between these parties belongs to the same class as that sued on in the case, just decided, of *Norrington v. Wright* [115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366], and likewise falls within the rule that in a mercantile contract a statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty or condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract. The provision in question in that case related to the time; in this it relates to the place of shipment. The thing sold and described in the contract is '500 tons No. 1 Shott's [Schotch] pig iron,' to be shipped 'from Glasgow as soon as possible.' It is not merely 500 tons of iron of a certain quality, nor is it such iron to be shipped as soon as possible from any Scotch port or ports; but it is iron of that quality, to be shipped from the particular port of Glasgow as soon as possible."

And after saying that the court was bound to give effect to the terms of the contract which the parties had chosen for themselves, further said:

"The term 'shipment from Glasgow' defines an act to be done by the sellers at the outset, and a condition precedent to any liability of the buyer. The sellers do not undertake to obtain shipment, nor does the buyer agree to accept iron shipped, at any other port. The buyer takes the risk of delay in getting shipment from Glasgow, or of delay or disaster in prosecuting the voyage from Glasgow to New Orleans. But he does not take the risk of delay or of sea perils which may occur in the course of the different voyage from Leith to the same destination. One or two illustrations may help to make this clear. If the sellers had shipped the iron by the first opportunity from Glasgow, the buyer could not have refused to accept it, even if it could have been shipped sooner from Leith. Again, the buyer would have an insurable interest in the iron during the voyage by reason of the title which would accrue to him, under the contract, on arrival and delivery, and of the profits that he might make in case of a rise in the market. 3 Kent, Com. 276; *French v. Hope Ins. Co.,* 16 Pick. [Mass.] 397; *Eastern Railroad v. Relief Ins. Co.,* 98 Mass. 420, 423."

See, also, *Detroit So. R. v. Malcomson,* 144 Mich. 172, 107 N. W. 915, 115 Am. St. Rep. 390; *Danne-Miller v. Kirkpatrick,* 201 Pa. 218, 50 Atl. 928; *Sousely v. Burns, Adm'r,* 73 Ky. (10 Bush) 87; *Tuttle-Chapman Coal Co. v. Cole-Dale Fuel Co.,* 136 Iowa, 382, 113 N. W. 827; *Lucas v. Nichols and Trustees,* 5 Gray [Mass.] 309; *Fairbanks, etc., Co. v. Midvale, etc., Co.,* 105 Mo. App. 644, 80 S. W. 13; *Miles v. Roberts,* 34 N. H. 245.

As a condition precedent to its right to recover, the Atlanta Lumber Company should have alleged that it had duly performed all the conditions precedent in the contract, or a waiver thereof (*St. Paul, etc., Ins. Co. v. Mittendorf et al.,* 24 Okla. 651, 104 Pac. 354, 28 L. R. A. [N. S.] 651), and thus given defendants an opportunity to controvert the fact of delivery. Had such been pleaded, plaintiff, before it could have recovered its pay for this lumber, would have been bound to prove a delivery on board car at Atlanta. This allegation not being made, the petition was demurrable; but nevertheless defendants answered, which, construed with a view to substantial justice, claimed exemption from liability on the ground that it had no contract with the Lodwick Lumber Company, and hence refused to accept the lumber attempted to be delivered to them at Lodwick. It cannot in reason be said that defendants waived this condition precedent by their attempted cancellation of the order before they knew that the lumber would be attempted to be delivered at Lodwick. This for the reason that Atlanta Lumber Company, by failing to plead such waiver in excuse of its failure to deliver, thus making of such waiver an issuable fact, cannot insist upon it for the first time in this court, and in fact the same is not attempted.

*International Money Box Co. v. Southern Trust & Deposit Co.,* 93 App. Div. 309, 87 N. Y. Supp. 881, was an action for goods sold and delivered under contract between the parties. It seems, as here, no waiver was pleaded, which would have made delivery needless. The trial court, upon failure to prove that plaintiff had sold and delivered to defendant the boxes in question, held that plaintiff could not recover, and dismissed the complaint. In affirming the judgment the court said:

"With respect to delivery, it was incumbent upon the plaintiff to prove either that the defendant had expressly repudiated the

contract, which would have made a delivery needless and futile, or that a delivery was made in accordance with the terms of the contract. Upon the latter subject the contract provided that the delivery was to be made f. o. b. New York City, and the proof was that, without a request from the defendant, the plaintiff delivered to an express company at New York City the 400 boxes, with directions to deliver the same to the defendant at its place of business at Baltimore, Md.; the charges of carriage to be there collected. Such a tender we do not think was sufficient to pass the title of the boxes to defendant, because the plaintiff could not bind the defendant by tender at a place different than that specified in the contract; nor could it annex to the tender the burden or condition of paying the carrying charges. The failure, therefore, to prove a proper legal tender was fatal to plaintiff's right to recover upon this branch of the case."

And further, in effect, that an answer to which a demurrer had been sustained could not be considered on appeal as an admission against defendant, especially where the same was not offered by plaintiff as an admission, and that hence the allegations therein contained were not proof of waiver of the tender of the goods ordered, though the same recited that the order had been cancelled before the time any delivery was attempted.

We are therefore of opinion that the court did right in sustaining the demurrer to the evidence as to the Lodwick Lumber Company for want of privity, and as to the Atlanta Lumber Company for the reason that it has failed to allege or prove that delivery was made in accordance with the terms of the contract, or that defendant had repudiated the same, which would have made delivery a vain thing.

Finding no error in the record, the judgment of the trial court is affirmed.

HAYES, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., dissents.