(101 So. 542)

### SUNNY SOUTH GRAIN CO. v. NATIONAL FEED CO. (6 Div. 83.)

(Court of Appeals of Alabama. Feb. 5, 1924. Rehearing Denied June 30, 1924.)

I. Pleading ⚖=194(4) — Demurrer to special plea setting up matters admissible under general issue held properly sustained.

In seller's action for price, demurrer to defendant's special plea was properly sustained, where it set up matters admissible under general issue.

---

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Appeal and error ⬾1040(6)—Sustaining demurrer to special plea not prejudicial, where defendant had benefit of all facts set up therein.**

Where defendant had, on trial, full benefit of facts set up in special plea, he could not complain of trial court's action in sustaining demurrer thereto.

**3. Pleading ⬾150—Office of "replication" to plea of "recoupment" stated.**

Office of a replication to a plea of recoupment is same as plea to complaint, as plea of "recoupment" is a cross-action and a "replication" is an answer to such cross-action.

**4. Sales ⬾354(10) — Demurrer to plaintiff's replication to defendant's plea of recoupment held properly overruled.**

In seller's action for price, demurrer to replication to plea of recoupment for failure to ship from St. Louis, averring a modification of the sale contract to permit shipment from a different point, was properly overruled.

**5. Contracts ⬾236—Executory contracts may be amended by mutual consent.**

While contracts are executory, they may be amended by mutual consent.

**6. Sales ⬾354(10)—Demurrer to replication to plea of recoupment held properly overruled.**

In seller's action for price, court did not err in overruling demurrer to plaintiff's replication to defendant's plea of recoupment, where it set up a modification of contract alleged in plea of recoupment.

**7. Sales ⬾87(1)—Law will presume that place where commodity is contracted to be sold is place of delivery.**

When commodity is contracted to be sold at certain place, law will presume that is place of delivery, in absence of any express stipulation in contract to contrary.

**8. Sales ⬾87(1)—Point of origin of shipment presumed to be at place of seller's business.**

When jobber doing business at St. Louis, Mo., accepted defendant's order in Birmingham for five carloads of meal, contract being silent as to place from which commodity should move, law presumes that point of origin of shipment was St. Louis.

**9. Appeal and error ⬾882(8) — Defendant could not complain of evidence of custom when pleaded by him.**

In seller's action for price of alfalfa meal, sold by contract silent as to point of origin of shipment, defendant could not complain of admission of evidence of custom as to place from which shipment might be made, where defendant's plea of recoupment brought issue of custom into case.

**10. Customs and usages ⬾10—Generally custom as an element of a contract is only evidence of fact.**

Generally custom as element of contract is only evidence of a fact, not of law, where contract is expressed in ambiguous language or is silent upon some material inquiry of fact.

**11. Customs and usages ⬾15(1) — General custom may be shown by parol testimony, and, if usage is general, it becomes part of contract.**

Where contract for sale of commodity was silent as to point of origin of shipment, parties might show by parol testimony general custom incident to particular business in which they were engaged, and, if usage was general in that business, so that both parties to contract had knowledge of it, it became part of contract.

**12. Sales ⬾182(1)—Whether meal graded up to seller's specifications held for jury on conflicting evidence.**

In seller's action for price of alfalfa meal, whether meal graded up to specifications of seller was for jury, where evidence was conflicting.

**13. Sales ⬾360(1)—Balance due on contract measure of damages in seller's action.**

Where buyer of first grade alfalfa meal claimed that tendered was second grade, whereupon seller permitted delivery upon payment of price of second grade meal, and sued for difference, measure of damages was balance due on contract price.

**14. Trial ⬾114—Counsel's argument held not to transcend legitimate bounds of argument.**

Counsel's argument in seller's action for price that defendant hunted all over Birmingham for brokers to tell jury that under contract of this kind seller was bound to ship meal from St. Louis, held not to transcend legitimate bounds of argument.

**15. Sales ⬾363—General charge for defendant held properly refused, where evidence conflicting.**

In seller's action for price, general charge for defendant was properly refused, where there was a conflict in the evidence.

**16. Trial ⬾260(1)—Refusal of charges substantially covered by oral charge held not erroneous.**

Refusal of charges fairly and substantially covered by court's oral charge is not error.

**17. Trial ⬾194(13)—Refusal of charge which invaded jury's province held not erroneous.**

In seller's action for price, refusal of charge that, if jury believed evidence, it was duty of plaintiff to ship meal from St. Louis was not erroneous, where evidence was in conflict, since it invaded province of jury.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action by the National Feed Company against the Sunny South Grain Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Sunny South Grain Co., 211 Ala. 615, 101 So. 546.

In his closing argument to the jury counsel for plaintiff made these remarks, to which defendant objected:

---

⬾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Why, gentlemen of the jury, the defendant hunted around all over Birmingham for brokers to come here and tell you that under a contract of this kind the seller was bound to ship the meal from St. Louis, Mo., and the only two they could find were Ben Morgan and little Alex Cecil."

Charge 9, refused to defendant, is as follows:

"If you believe the evidence, the court charges you that it was the duty of the plaintiff to ship the meal in question from St. Louis."

Smith, Wilkinson & Smith, of Birmingham, for appellant.

Nothing having been said between the parties as to the point from which the commodity should move, it was the duty of the seller to ship from St. Louis. Lodwick Lbr. Co. v. Butts Lbr. Co., 35 Okl. 797, 131 P. 917; Gwin v. Hopkinsville Mill. Co., 190 Ala. 346, 67 So. 382; Offut v. Wells, 42 Ala. 199; Dressler-Beard Mfg. Co. v. Winter Garden Co. (Sup.) 158 N. Y. S. 875. The court erred in admitting evidence of custom offered by plaintiff. Price v. White, 9 Ala. 563; Middleton v. W. U. T. Co., 197 Ala. 243, 72 So. 548; McDonough v. Evans Marble Co., 112 F. 634, 50 C. C. A. 403; Byrd v. Beall, 150 Ala. 123, 43 So. 749, 124 Am. St. Rep. 60; Insurance Co. v. Hill, 9 Ala. 722; Nonotuck Silk Co. v. Fair, 112 Mass. 354; Chilberg v. Lyng, 128 F. 899, 63 C. C. A. 451; Isaksson v. Williams (D. C.) 26 F. 642; Edwards v. Kilgore, 192 Ala. 343, 68 So. 888; Hurricane Mill. Co. v. S. & P. Co., 84 W. Va. 376, 99 S. E. 490, 6 A. L. R. 637; Cole Motor Co. v. Tebault, 196 Ala. 382, 72 So. 21. The argument of counsel was improper. St. L. & S. F. v. Farr, 56 F. 994, 6 C. C. A. 211; Ala. I. & F. Co. v. Benenante, 11 Ala. App. 644, 66 So. 942; Simon v. Still, 206 Ala. 253, 89 So. 713; Sullivan v. State, 66 Ala. 48; Florence Co. v. Field, 104 Ala. 471, 16 So. 538. Demurrer to plea 6 should have been overruled. George v. Roberts, 186 Ala. 521, 65 So. 345.

Nesbit & Sadler, of Birmingham, for appellee.

There was no error in sustaining demurrer to plea 6, since the matter set up was provable under the general issue. Andrews' Stephen's Pl. (2d Ed.) § 150; Comer v. Franklin, 169 Ala. 573, 53 So. 797; Moore Bros. v. Cowan, 173 Ala. 536, 55 So. 903; West Ry. v. Mitchell, 148 Ala. 35, 41 So. 427; C. H. Gilliland & Son v. Martin, 149 Ala. 672, 42 So. 7. While contracts are yet executory, they may be amended by mutual consent. Pioneer S. & L. Co. v. Nonnemacher, 127 Ala. 521, 30 So. 79; Hartford v. Attalla, 119 Ala. 59, 24 So. 845; Mylin v. King, 139 Ala. 319, 35 So. 998; Warren v. Lanier & Cash, 143 Ala. 158, 39 So. 124; Wellden v. Witt, 145 Ala. 605, 40 So. 126; Elliott v. Howison, 146 Ala. 568, 40 So. 1018. Where a contract is silent as to place of shipment, and evidence of custom

parol evidence is admissible to determine what the agreement was. Smith v. Wilson Mer. Co., 6 Ala. App. 171, 60 So. 484; Roquemore v. Vulcan Ir. Works, 151 Ala. 643, 44 So. 557; Henderson v. Holmes & Dawson, 204 Ala. 203, 85 So. 536; Reeves v. Jordan, 197 Ala. 64, 72 So. 322; Rose v. Lewis, 157 Ala. 521, 48 So. 105; Henderson-Boyd v. Cooke, 149 Ala. 226, 42 So. 838; Munson Co. v. Turner Co., 202 Ala. 574, 81 So. 76; Lutz v. Van Heynigen Co., 199 Ala. 620, 75 So. 284; Loval v. Wolf, 179 Ala. 505, 60 So. 298; Chattanooga Brew. Co. v. Smith, 3 Ala. App. 551, 58 So. 63.

FOSTER, J. On May 11, 1920, the Sunny South Grain Company, manufacturers of a mixed stock food in Birmingham, bought through Smith Brokerage Company, brokers residing in Meridian, Miss., from the National Feed Company, jobbers of St. Louis, Mo., five cars No. 1 alfalfa meal to be shipped during the first half of June, 1920. The order 'from the Smith Brokerage Company to the National Feed Company was in the following words:

"Book Sunny South Grain Company, Birmingham five cars twenty-one tons each, No. 1 alfalfa meal second-hand sacks if can ship by June 15th $52.00 per ton delivered arrival draft allowing examination brokerage fifty cents per ton. Answer by telegraph immediately."

The order was so booked and confirmation sent to the Sunny South Grain Company by the National Feed Company, in which confirmation it is recited as follows:

"St. Louis, Mo., May 11, 1920.

"Sold to Sunny South Grain Company, Birmingham, Alabama, ship to Birmingham, Alabama, railroad delivery five cars No. 1 alfalfa meal, second hand 100 lb. sacks. Price $52.00 c. a. f. Birmingham. Time of shipment by June 15th. Terms arrival draft."

There was evidence that a general custom or usage existed in the hay and grain and alfalfa meal business to the effect that, when an order is placed with a jobber, such jobber has the right to fill that order by directing shipment to the consignee from any point within the United States, if the goods are turned over to the railroad for delivery within the time specified in the contract, provided there is nothing stated in the contract as to where such goods should be shipped from. There was also evidence that in several previous similar transactions between the plaintiff and the defendant the goods purchased had been shipped from a point other than the place of business of the National Feed Company, and no objection was made.

All of the meal was turned over to the railroad for delivery "by June 15th," and all of the cars eventually arrived in Birmingham, the last one about July 22d. For three of the cars the defendant paid the contract

price of $52 per ton. The defendant wired the plaintiff that two of the cars graded No. 2. Upon receipt of that telegram the plaintiff wired the bank which held the draft, to which was attached the bill of lading for the two cars in question, to surrender the bill of lading upon the payment of a less sum. Shortly after the telegram to the bank reducing the draft the plaintiff received from its broker in Birmingham samples from each of the two cars, which samples, in plaintiff's opinion, showed the meal to be No. 1, as contracted for, and not No. 2, as the defendant claimed. Immediately upon receipt of such samples the plaintiff wired the bank rescinding its previous authorization, but before the bank received this latter telegram the bills of lading had been surrendered to the defendant under the authority of the previous telegram to the bank.

The samples which were sent to the plaintiff were taken out of each car by one Bigsby, who testified that he sent the respective samples to the plaintiff, National Feed Company, identified as having come out of the respective cars. Portions of these samples were shown to disinterested persons, who were experts, and each of them graded the meal No. 1.

There was evidence that in the ordinary course of business meal shipped from St. Louis during June, 1920, would have arrived in Birmingham seven days later. On June 11, 1920, the defendant wired plaintiff that it was urgently in need of the meal, and asked when it would ship same. Plaintiff answered by wire the same day that it would wire the mills for particulars. Defendant immediately notified plaintiff that it would not accept shipment from some mill, but would demand St. Louis ladings. Plaintiff had a mill at Garden City, Kan., a point some 700 miles more distant from Birmingham than was St. Louis, to ship the meal on the 14th or 15th of June. The meal reached Birmingham about July 14th to July 22d. It was claimed by defendant that it was unable to fill its contracts for mixed feed that it had entered into, relying upon the plaintiff to ship the meal (which was a material ingredient in such feed) from St. Louis by June 15, 1920, and expecting it to arrive in Birmingham about June 22, 1920, and that the damage sustained by the defendant was in contemplation of the parties.

It was claimed by the plaintiff that the defendant, after having been notified that the meal had been shipped from Garden City, Kan., agreed to take it upon arrival in Birmingham if it graded No. 1. It was claimed by the defendant that the grading was to be done by the federal grain inspector at Birmingham, and that his grading would be conclusive, and that the federal inspector graded three cars No. 1, for which the defendant paid the contract price, and

two cars No. 2, for which the defendant agreed to pay, and did pay, $35 per ton. The plaintiff claimed that the two rejected cars graded No. 1, and sued the defendant to recover the difference between the contract price of No. 1 meal ($52 per ton), and the price paid by the defendant ($35 per ton).

The case was submitted to the jury upon the following pleadings: Complaint on common counts; defendant's pleas 1 and 3 (the general issue); plea 4 (payment); pleas 8 and 9 (recoupment); plaintiff's general replication 1 and replications 2 and 3; defendant's general rejoinder 1 and rejoinder 3.

Plea 6, to which demurrer was sustained, which ruling is assigned as error, set up that the defendant purchased from the plaintiff at St. Louis five cars of meal to be shipped by June 15th, and that had it been shipped from St. Louis by that time it would have arrived in Birmingham by June 22d, but the meal was not shipped from St. Louis, but from some other place, and, after the time the meal should have arrived in Birmingham had it been shipped from St. Louis, the defendant advised the plaintiff that it was under the impression that the meal was going to be shipped from St. Louis, and because it had been shipped from Garden City it had been delayed, and on that account he had been compelled to cancel orders for a large quantity of mixed feed he had agreed to sell, of which the meal was a material ingredient, and also notified the plaintiff that defendant was going to have the meal inspected by the federal grain inspector at Birmingham, and if it graded No. 1 he would take it, but if it was not graded No. 1 by the federal grain inspector he would reject it; and the plea further avers that the plaintiff agreed to that proposition and all of the meal which the federal grain inspector graded No. 1 had been paid for and that graded No. 2 had been rejected and the plaintiff thereafter offered to sell to the defendant this rejected meal at a reduced price, which the defendant had accepted and paid for.

[1, 2] The matters set up in plea 6 which were pleadable in bar were admissible under the general issue. Under the common counts the burden was upon the plaintiff to reasonably satisfy the jury by the evidence of a fully executed contract, leaving nothing to be done except the payment of money. All defensive matters upon the merits were available to the defendant under its plea of the general issue that the contract had not been performed, that the goods were not up to grade, or any other like state of facts which would be a defense to the action. Andrews' Stephens' Pleading (2d Ed.) § 150. It is not reversible error to sustain a demurrer to a special plea setting up matter admissible under the general issue. Comer v. Franklin, 169 Ala. 573, 53 So. 797; Moore Bros. v. Cowan, 173 Ala. 536, 55 So. 903;

Western Ry. v. Mitchell, 148 Ala. 35, 41 So. 427; Gilliland v. Martin, 149 Ala. 672, 42 So. 7.[1] Furthermore, the defendant had on the trial full benefit of all the facts set up in plea 6, and cannot complain of the action of the court in sustaining demurrer to the plea.

[3, 4] Pleas 8 and 9 were pleas of recoupment, not pleas in bar. "The office of a replication to such a plea is the same as a plea to a complaint. The plea of recoupment is a cross-action, a suit by the defendant against the plaintiff; a replication is an answer to such cross-action." Plea 8 alleged that the contract sued on by the plaintiff was a contract to ship from St. Louis, which had not been performed in that particular, to defendant's damage. The replication (No. 2) set up that, while it is true there was a contract at one time to that effect, the contract, while yet executory, was amended by mutual consent of the parties, so that, as amended, the meal might be shipped from Garden City at the time it was shipped. The replication avers a modification of the contract averred in the pleas in such way as to show that the facts set up in the plea constituted no breach of such amended contract, and hence no right in the defendant to recover on such plea.

[5] While contracts are executory, they may be amended by mutual consent. Pioneer S. & L. Co. v. Nonnemacher, 127 Ala. 521, 30 So. 79; Hartford v. City of Attalla, 119 Ala. 59, 24 So. 845; Mylin v. King, 139 Ala. 319, 35 So. 998; Warren & Lanier v. Cash, 143 Ala. 158, 39 So. 124; Wellden v. Witt, 145 Ala. 605, 40 So. 126; Elliott v. Howison, 146 Ala. 568, 40 So. 1018. The demurrer to plaintiff's replication No. 2 was properly overruled.

[6] The court did not err in overruling the demurrer to plaintiff's replication 3, which set up a modification of the contract alleged in the plea. Authorities supra.

[7, 8] When a commodity is contracted to be sold at a certain place, the law will presume that is the place of delivery, in the absence of any express stipulation to the contrary in the contract. Offutt v. Wells, 42 Ala. 199; Gwin v. Hopkinsville Milling Co., 190 Ala. 346, 67 So. 382; Lodwick Lumber Co. et al. v. Butt Lumber Co., 35 Okl. 797, 131 P. 917. When the plaintiff, a jobber doing business at St. Louis, Mo., accepted the order of the defendant manufacturer of mixed stock feed in Birmingham, for five carloads of No. 1 alfalfa meal, the contract being silent as to the place from which the commodity should move, the law will presume that the point of origin of the shipment was St. Louis, Mo., the place of business of the seller.

[9-11] The appellant contends that, when

[1] Reported in full in the Southern Reporter; not reported in full in Alabama Reports.

the contract is silent as to the point of origin of shipment, it is not competent to show the general custom and usage in the particular kind of business. The appellant cannot complain that this issue was brought into the case. In its plea 8 it avers, among other things, that the contract "is silent as to the place where the said meal was shipped from; that at the time said contract was entered into, and for some time prior thereto, there was a well-recognized and established custom among persons engaged in business of like character to the effect that, where a contract of the kind made between the plaintiff and the defendant was silent as to the place where the meal should be shipped from, it should be shipped from the place where the seller's place of business was located." The defendant brought the issue of custom or usage into the case. Evidence was introduced by both plaintiff and defendant; the plaintiff's evidence tending to show that there was a custom or usage among persons engaged in the business of buying and selling grain and alfalfa meal to the effect that, where a contract of purchase was silent as to the place from which shipment may be made, the jobber had the right to ship from any point in the United States, and the testimony for defendant tending to show that the shipment must be made from the place where the seller's business was located. The general and well-established rule in reference to a custom as an element of a contract is that it is only evidence of a fact, not of law, where the contract is expressed in language of an ambiguous or doubtful meaning, or is silent upon some material inquiry of fact.

"To establish such custom, and make it operative in any given case, it must be reasonable, not against the law or public policy, not opposed to any express term of the contract, and must be so general and so known, as to justify the presumption the parties knew of it, and contracted in reference to it." Buyck & Cain v. Schwing, 100 Ala. 355, 14 So. 48, and authorities there cited.

Where the contract was silent as to the point of origin of the shipment, it was competent for the parties to show by parol testimony the general custom and usage incident to the particular business in which they were engaged, and, if the usage is shown to be a general one on that business, in such sort as it must follow that both parties to the contract had knowledge of it, it becomes part of the contract. If the proof fail to raise this inference, it should be regarded as insufficient. Custom cannot overturn the positive requirements of the law or the express contracts of the parties. But proof of custom may be received to supply the details of a contract where the contract is silent in its details, unless such custom contravene the positive requirements of the law or some principle or public policy. The court did not

err in admitting the evidence of custom or usage.

It is contended by the plaintiff that there was a modification of the contract after the defendant was informed that the meal had been shipped from Garden City, Kan., and before the shipment reached Birmingham, by which the defendant agreed to accept the five cars of meal if they graded No. 1. On July 12, 1920, the defendant wrote the plaintiff a letter, the pertinent part of which reads as follows:

"Now, gentlemen, we are going to handle this shipment in this way: We have turned the car numbers over to the federal grain inspector at Birmingham. We have advised him that we bought from you No. 1 green alfalfa meal. If it comes up to this grade, we are going to accept the shipment, if it doesn't reach here until fall. If it fails to come up to this specification, we are not going to accept the shipments and are not going to make any counter offers on it, for we only use No. 1 green meal, and are not interested in any other grading."

The defendant contends that this means, "If the federal grain inspector grades it No. 1, we will accept it; if not, we will reject it." The plaintiff contends that it means, "If it comes up to this grade (No. 1), we are going to accept the shipment, if it does not reach here until Fall." The undisputed evidence shows that the federal grain inspector graded three cars No. 1 and two cars No. 2. There was evidence for the plaintiff that the five cars graded No. 1.

[12] It is not necessary to here set out all of the correspondence between the parties. Suffice it to say the court properly submitted to the jury all of the evidence upon the question of the modification of the contract, and we will not disturb the verdict of the jury when there was ample evidence from which they could conclude that the defendant, after being informed that the shipment had been made from Garden City, Kan., and before it reached Birmingham, agreed to accept the meal at the contract price of $52 per ton, provided it graded No. 1 and reached Birmingham during the fall, and that the meal reached Birmingham in July. There was a conflict in the evidence as to the grade of the meal, but this, of course, was also a question for the jury.

[13, 14] In case of recovery by the plaintiff, the measure of damages is the balance due on the contract price. St. Louis Hay & Grain Co. v. A. C. I. & P. Co., 167 Ala. 442, 52 So. 904. The portion of the argument of counsel for plaintiff to which exception was reserved does not transcend the legitimate bounds of argument. There is no merit in the exceptions reserved to the evidence.

[15] Charges 1, 2, and 3 requested by the defendant (the general charge for the defendant) were properly refused, as there was a conflict in the evidence.

[16] Charges 4, 5, and 8 were fairly and substantially covered by the oral charge of the court, and their refusal was not error.

[17] Charge 9 was faulty, as invasive of the province of the jury. There was a conflict in the evidence as to the place from which the meal should have been shipped. There is no merit in the exceptions reserved to certain portions of the oral charge of the court. The learned trial judge fully and fairly covered every phase of the case in his oral charge, and correctly charged the law. The court did not err in refusing defendant's motion for a new trial.

While there are a large number of assignments of error, the court is of the opinion that none of them are prejudicial to the rights of the appellant, and the judgment of the lower court will therefore be affirmed.

Affirmed.

### On Rehearing.

After the words in the original opinion, as follows: "There was also evidence that in several previous similar transactions between the plaintiff and the defendant the goods purchased had been shipped from a point other than the place of business of the National Feed Company and no objection was made," add the following: The evidence for the defendant was that it had no knowledge of shipments having been made from points other than St. Louis.

We are of the opinion that the other matters of evidence referred to in the supplemental brief of counsel for appellant are sufficiently stated in the original opinion.

We adhere to our original opinion, and the application for rehearing is overruled.

Application overruled.