[Sac. No. 920.   Department One.—November 6, 1902.]

## J. K. ARMSBY COMPANY, Respondent, v. J. BLUM et al., Appellants.

SALE OF PEACHES—DELIVERY ON BOARD CARS—EXAMINATION AND AC-
CEPTANCE—CONSTRUCTION OF CONTRACT.—Under a written contract
to deliver five carloads of peaches bought free on board the cars,
packed in bags, examination and acceptance to be made at the time
of delivery, the examination and acceptance should immediately
precede the delivery, which is to be deemed complete when the car
is loaded in bags, as agreed, without cost to the purchasers.

ID.—INSTRUCTIONS OF PURCHASERS TO WAREHOUSEMEN—CONTRACT NOT
MODIFIED.—Instructions by the purchasers to a warehouseman to
inspect the peaches to be delivered under the contract, and to accept
five carloads of the same quality with a sample, and to store the
same in his warehouse and issue warehouse receipts to the vendor,
constitute a matter solely between them and the warehousemen as
to the care of the peaches after they had left the control of the
vendor, in carloads, and do not tend to establish a modification of
the contract in the absence of an agreement for such modification.

ID.—LOSS BY FIRE IN WAREHOUSE—ACTION FOR PURCHASE MONEY.—
Where two carloads of the peaches were lost by fire in such ware-
house, the loss cannot fall upon the vendor, who had delivered the
fruit on the cars according to the contract; and the vendor is en-
titled to recover from the purchasers the purchase money therefor.

ID.—PASSAGE OF TITLE TO PURCHASERS—TIME OF PAYMENT—LEGAL
PRESUMPTION.—The question whether the title to the carloads of
peaches had passed to the purchasers is immaterial, where the
contract, being silent as to the time of payment, and as to any
different agreement, must be legally presumed to entitle the
vendor to payment for the peaches immediately upon their delivery
under the terms of the contract.

ID.—OFFER TO PROVE CUSTOM.—An offer of the purchaser to prove a
custom in the dried-fruit business in this state as to when title to
the property mentioned in the contract would pass to the vendee,
and as to when the goods mentioned therein would be paid for,
was properly rejected.   Such custom can have no relevance, where
no defense is pleaded that the action was prematurely brought.

ID.—PAYMENT FOR OTHER CARLOADS—DRAFTS AND INVOICES.—Drafts
and invoices for other carloads drawn after they had been shipped
out of the state, and a letter from one bank to another accompany-
ing one of the drafts,—all bearing date long subsequent to the
delivery of the two carloads sued for (the invoice of which shows
a delivery to the purchasers' agent on the day of its date),—are
inadmissible and irrelevant to the issue before the court.

APPEAL from a judgment of the Superior Court of Solano County and from an order denying a new trial.  A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

Max Blum, George A. Lamont, and William M. Sims, for Appellants.

Louis Titus, for Respondent.

HARRISON, J.—The plaintiff and the defendants entered into the following written contract at San Francisco on the tenth day of July, 1899:—

"San Francisco, Cal., July 10th, 1899.

"J. K. Armsby Company has sold and J. and I. Blum have bought five (5) carloads of choice yellow free peaches at six (6) cents per pound F. O. B. cars at Armona, packed in bags, delivery not later than August 31st, 1899, examination and acceptance to be made at time of delivery.

"J. K. Armsby Co.,
"Per J. R. Hamilton.
"J. & I. Blum,
"M. W. B."

Under this agreement the plaintiff delivered to the defendants prior to August 26, 1899, three carloads of the peaches, which were accepted and paid for.  On that day the remaining two carloads, after having been examined and accepted, were packed in sacks by the plaintiff, taken from its warehouse at Armona, and placed upon a car and moved to the warehouse of one Downing, about four hundred feet distant therefrom, where, during the following night, they were destroyed by fire.  The plaintiff has brought the present action to recover for these two carloads, alleging in its complaint that it had delivered them to the defendants as in said contract provided, and that they had refused to pay for the same.  In their answer to the complaint the defendants deny that the plaintiff had delivered any of the peaches referred to in the contract, except the three carloads for which they had paid; and for a special defense to the action alleged that after the execution of the contract set forth in the complaint it was

modified by the parties thereto "so that the plaintiff undertook and agreed to store two carloads of said peaches in a warehouse at Armona, California, and thereafter to make delivery thereof," and that the plaintiff had failed and neglected to deliver or store said two carloads of peaches. Upon the trial of the cause, the court in its findings, after setting forth the execution of the contract, found that it had not been modified by the parties in any respect, and that the plaintiff had delivered to the defendants the five carloads of peaches as in the contract provided, and that they had not paid for two carloads thereof, and thereupon entered judgment against them as prayed for. The defendants moved for a new trial upon the ground that the evidence was insufficient to sustain the finding of the court that the contract had not been modified, and the finding that the plaintiff had delivered to them more than three carloads of the peaches, and also upon the ground that the court had erroneously excluded certain evidence offered by them at the trial. From the order denying this motion and from the judgment the defendants have appealed.

1. Before any of the peaches had been delivered, the defendants, who reside at Vacaville, requested Charles Downing, a fruit-grower and warehouseman at Armona, to inspect the peaches to be delivered to them under the contract, and upon receiving from him a sample which he had forwarded, they wrote him, on August 23d, authorizing him to accept five carloads of the same quality, and as rapidly as inspected put the same into his warehouse and issue warehouse receipts to the plaintiff. On August 24th one of the defendants, in reply to a telegram from Mr. Hamilton for shipping instructions as to two cars that were ready, telephoned that Mr. Downing had instructions from them what to do with their peaches; but neither the defendants nor Mr. Downing informed the plaintiff of the nature of the instructions, except that upon the inspection of the peaches in controversy Mr. Downing said to King, who had charge of the plaintiff's warehouse in which they were, that he had had instructions from Mr. Blum to take care of the peaches. Downing also testified that King told him that he had instructions to deliver them to his house. One of the defendants testified that in a conversation with Hamilton over the telephone he asked him if, in case the

defendants wished to have the peaches put in a warehouse, he would be willing to do so. He was unable to say that Hamilton made him any definite response to this inquiry, and Hamilton, when questioned on the subject, testified that he had never assented to any arrangement for putting the peaches in a warehouse.

This is all the evidence offered in support of the averment that the contract had been modified, and was clearly insufficient to authorize a finding to that effect. Not only does the evidence fail to establish the terms of the modification as pleaded, but it clearly appears that no proposition for any modification was made to the plaintiff or assented to by it. The instructions from the defendants to Downing was a matter solely between them and Downing, and had reference to the care of the peaches after they had left the control of the plaintiff.

2. By the terms of the contract between the plaintiff and the defendants, the examination and acceptance of the peaches was to be made ''at the time of delivery.'' The delivery was not to be later than August 31st, and the peaches were to be packed in bags, ''F. O. B. cars at Armona.'' It is admitted by the pleadings that the expression ''F. O. B. cars at Armona'' means free on board cars at Armona, and was understood by each of the parties to the contract to have that meaning. Although the examination and acceptance of the peaches were to be made at the time of delivery, and a literal reading thereof would require the delivery to be concurrent with the examination, yet, in the natural sequence of the transactions, the examination and acceptance would precede the delivery, and the clause is to be construed as authorizing a delivery immediately upon such examination and acceptance. Under the terms of the contract the plaintiff, therefore, complied with its agreement for a delivery of the peaches, when they had been examined and accepted, packed in bags, and placed upon the cars without any cost therefor on the part of the defendants. There was no evidence before the court tending to show that any further act was required on the part of the plaintiff before the delivery to the defendants became complete. The direction from the defendants to Downing to put the peaches in his warehouse ''as rapidly as they tender you these five cars'' did not impose any obligation upon the plain-

tiff, and implies that it was the understanding of the defendants that a "tender" of the peaches in the car was a compliance by the plaintiff with its contract. This understanding is further shown by the question asked of Hamilton by Blum if he would as willingly put the peaches in a warehouse "as to load them on the cars." When Hamilton asked for shipping instructions as to the first two carloads Blum replied to him that Downing had instructions from them what to do with their peaches, but did not tell him what those instructions were. When Downing had examined and approved the peaches in controversy he told King that he had better sack them up and get them over to his warehouse, and said that he had better load them in the cars. King thereupon sacked the peaches, placed them in the car, and had the car moved from the warehouse of the plaintiff to Downing's warehouse. Downing also directed King to pay the expense of moving the car to his warehouse and charge it to the defendants.

3. The offer of the defendants to show by the testimony of Blum a custom in the dried-fruit business in this state as to when title to the property mentioned in the contract would pass to the vendee, or when the goods mentioned therein would be paid for, was properly rejected. Whether the title had passed to the vendee or not, was immaterial, if, under the terms of the contract, express or implied, the price of the peaches was payable upon their delivery to the defendants. In the absence of an agreement to that effect payment is not essential to a transfer of title, when the goods have been unconditionally delivered to the vendee, and evidence of any custom as to the time when the property vested in the defendants was immaterial. It is not contended by the defendants that the action was prematurely brought, and evidence of such custom, even if admissible under any circumstances, would be available or material only under a defense of this nature. The contract is silent respecting the time of payment, and in the absence of any different agreement the legal presumption is, that the plaintiff was entitled to payment for the peaches immediately upon their delivery.

For the same reason the documents offered in evidence by the defendants were properly excluded. These were the sight-drafts made by the plaintiff upon them for the three carloads of peaches that had been previously delivered and paid for,

together with invoices for the same, and a letter from the Nevada Bank to the Bank of Vacaville, which accompanied one of the drafts. The course taken by the parties with reference to the delivery of the three carloads which were paid for was not shown at the trial, but it appears from a memorandum upon each of the invoices that they had been shipped out of the state before the drafts were drawn upon the defendants. It is evident therefrom that it was not a part of the contract that the peaches should be paid for before they were delivered to defendants. Moreover, these drafts and the invoices therefor, as well as the letter of the Nevada Bank, were all of a date many days subsequent to the delivery of the peaches sued for herein, and, as they could not illustrate that transaction, were neither material nor relevant to the issue before the court. The invoice for the peaches for which this action was brought was offered in evidence by the defendants and was admitted by the court. This invoice bears date of the day of their delivery, and contains a memorandum that they were delivered to Downing.

The judgment and order are affirmed.

Van Dyke, J., and Garoutte, J., concurred.

Hearing in Bank denied.