Tuttle-Chapman Coal Company, Appellee, v. Coaldale Fuel Company, Appellant.

**Divisible contracts:** RESCISSION. A contract to sell and deliver all coal mined for a definite period and at a specified price, settlement and payment to be made each month for all coal previously delivered is divisible, and cannot be rescinded for a breach of its conditions unless such breach goes to the entire consideration.

**Breach of contract:** MEASURE OF DAMAGES: MARKET PRICE. As a general rule the measure of damages for breach of an executory contract of sale is the difference between the contract price and the market price at the time and place of delivery as provided in the contract; and where a contract provides that the purchaser shall accept and pay for the property f. o. b. cars at a designated place, that is the place of delivery, and the market price at that place governs.

**Same.** If there is no market value of like property at the place of delivery provided in the contract, then its value at other places not too remote may be shown, for the purpose of fixing the damages for a breach of the agreement.

**Same:** EVIDENCE. Where it is shown that a like commodity is produced in the immediate vicinity of the place where that sold is to be delivered, an exclusion of evidence of the market value at the place of delivery for the purpose of determining the damages for breach of the contract is erroneous.

**Same:** INSTRUCTION. An instruction in the instant case relative to the measure of damages for breach of an executory contract of sale is held uncertain and confusing in its terms, and predicated upon an erroneous review of the law.

**Same:** MARKET VALUE: EVIDENCE. A wholesaler purchasing to supply his trade cannot show the retail price of the produce at the governing market, for the purpose of establishing its market value and measuring his damages for the seller's breach of the contract.

*Appeal from Polk District Court.*— Hon. Hugh Brennan, Judge.

Tuesday, November 19, 1907.

Action at law to recover damages for breach of contract to sell and deliver coal. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.— *Reversed.*

*Ryan, Ryan & Ryan,* for appellant.

*Hallam & Stevenson* and *Miller & Wallingford,* for appellee.

· Deemer, J.— By written agreement entered into May 2, 1904, defendant undertook to sell practically all the coal mined by it during the year from May 2, 1904, to May 1, 1905, and plaintiff agreed to accept and pay for the same at the rate of $1.10 per ton f. o. b. cars, Coaldale, Iowa. Payment to be made monthly for all coal shipped in any one month not later than the 10th of the following month. Coal was delivered during the months of May, June, July, and the first half of August under this contract, at which last-named date defendant failed and refused to deliver any more, coal. This action is to recover damages for the breach of said contract. Defendant admitted the execution of the contract, but averrred that plaintiff failed to pay for the coal as agreed, and otherwise failed to perform its part of the contract, and that, by reason thereof, the contract was abrogated and defendant released from the terms thereof. These were the main issues in the case, and the result was a verdict and judgment for plaintiff. Something like eighty-eight errors are assigned, but the controlling propositions are few, and these only need be considered.

The first contention made for appellant is that the contract sued upon is an entire and indivisible one, and that, as plaintiff failed to pay for coal as delivered and accord-

ing to the terms of the contract, this amounted to such a

breach and repudiation thereof as entitled de-

**1. DIVISIBLE CONTRACTS: rescission.** fendant to rescind.   Instructions to this effect were asked by defendant, which were refused, and in other ways the question was raised, so that we have to determine whether or not plaintiff's failure to pay for coal as delivered pursuant to the terms of the contract amounted to such a breach thereof as relieved defendant from the further performance thereof.   Whatever might be thought of this as an original proposition, the principle is well established in this State that such contract is in its nature divisible, and defendant had no right of cancellation because of plaintiff's failure to· pay for the coal as delivered according to the exact terms of the agreement. Under the contract now before us, plaintiff was to take practically the entire output of coal from defendant's mine, but it was also to pay for it by the month, and for all shipped during each of the several months covered by the contract not later than the 10th of the following month.   At the end of each month, the rights and obligations of the parties were settled in so far as they related to coal delivered during that month, and were not dependent upon whether anything further was done under the contract.   Failure to pay for coal delivered during any one month manifestly did not go to the whole consideration.   Defendant's rights were fixed at the end of each month.   For the amount due each month it had its remedy, which was as a last resort an action for the purchase price of the coal already delivered.   The case is ruled by *Hansen v. Consumers' Co.*, 73 Iowa, 77; *Osgood v. Bauder*, 75 Iowa, 550; *Myer v. Wheeler*, 65 Iowa, 390; *Brick Mfg. Co. v. Herrick*, 126 Iowa, 721.

II.   The next proposition advanced by defendant is that the proper measure of damages was the difference between the contract price and the market price at Coaldale, Iowa, during the months when defendant failed and refused to deliver the coal.   Appellee contends that the

market price at Sioux City for which place plaintiff

**2. BREACH OF CONTRACT: measure of damages: market price.** purchased the coal should govern. In its rulings on the admission and rejection of testimony and upon other matters during the trial the district court held that the market price at Sioux City, and not the price at Coaldale, should govern, and, as we shall presently see, it so instructed the jury. The basis of this holding, as we understand, was that plaintiff was a wholesale dealer in coal at Sioux City, and that the coal was to be shipped to that point in the absence of any other or further instructions from plaintiff. If we were to accept plaintiff's version of the matter, the place of delivery was optional with it, and not at Coaldale; but, if the place of delivery is fixed by the written contract, the market value at that place must be our guide, even though the parties thought that delivery was to be made at some other place. Of course, if there was no market value at the place of delivery fixed by the contract, resort might be had to the market value at other nearby places, or at a place which might be the controlling or determinative market, whereby to ascertain the value of coal at Coaldale. The general rule everywhere recognized is that the measure of damages for breach of an executory contract of sale is the difference between the contract price and the market price at the time and place of delivery provided for in the contract itself. Cannon v. Folsom, 2 Iowa, 101; Manville v. Telephone Co., 37 Iowa, 214; Osgood v. Bauder, 75 Iowa, 550; Boies v. Vincent, 24 Iowa, 387.

The primary question, then, is: Was there a place fixed in the contract for the delivery of the coal? The stipulation with reference to the delivery reads: " Second parties hereby agree to accept and receive above stated quantity and to pay said first party at the rate of $1.10 per ton f. o. b. cars Coaldale, Iowa." This very clearly makes the place of delivery or of the receipt and acceptance of the coal Coaldale, Iowa, and the market value at that place must be

the basis for estimating damages, unless the case falls within some exception to the general rule. As supporting this conclusion, see *Congdon v. Kendall,* 53 Neb. 282 (73 N. W. 659); *Miller v. Seaman,* 176 Pa. 291 (35 Atl. 134); *Dannemiller v. Kirkpatrick,* 201 Pa. 218 (50 Alt. 928); *Armsby Co. v. Blum,* 137 Cal. 552 (70 Pac. 669); *Capehart v. Imp. Co.,* 103 Ala. 671 (16 South. 627, 49 Am. St. Rep. 60). The words " f. o. b.," which now have a definite meaning, are very important, and when used as in the contract now before us make it very clear that the place of delivery was not Sioux City or some other place to which the plaintiff might direct the coal to be shipped, but at Coaldale, where plaintiff agreed to accept and receive the coal f. o. b. Plaintiff contends that the provision of the contract which we have quoted does no more than to indicate that plaintiff was to pay the freight and cartage in addition to $1.10 per ton, and that the place of delivery as contemplated by the parties was Sioux City, Iowa. Reliance for this contention is placed upon the designation of plaintiff's place of business in the contract as Sioux City. In so far as the proposition is based upon the designation of plaintiff's place of residence, the argument is manifestly unsound. But plaintiff's counsel say that the case is ruled by *Cook v. Randall,* 62 Iowa, 244, and *Faulkner v. Closter,* 79 Iowa, 15. The *Cook* case involved no such contract as the one now before us, and is in no sense controlling. The agreement in that case was in the nature of an agency contract, whereby plaintiffs gave defendants the exclusive right to sell articles manufactured by plaintiffs in Polk and five adjacent counties in the State. There was no such agreement as in this case to accept, receive and pay for the goods f. o. b. cars at Coaldale, Iowa. The *Faulkner* case does not support appellee's position, but, on the contrary, is an authority for appellant, in that it holds that the market value must be fixed at the place of delivery. We are of opinion that the place of delivery was fixed in the contract

now before us, and that that place was Coaldale, Iowa; and not Sioux City, as held by the trial court.

But appellee further argues that there was no market price at Coaldale, and that the Sioux City price, less freight and cartage, must govern. There are, of course, exceptions, or apparent exceptions, to the general rule above announced. If for any reason there be no market value at the time and place fixed for the delivery of the goods, then the market value at other places not too remote may be considered for the purpose of fixing damages, either upon the theory that that market is the one which must control, or that the prices there prevailing show the value at the place of delivery as nearly as it is possible to show such value. It is not material which of these views be adopted; for before the exception will apply it must be shown either that no coal such as defendant sold could be obtained at or near Coaldale, or that there was no market value for such coal at Coaldale. Neither of these things were here shown. On the contrary, it was shown that defendant's mine was within three miles of the Union Station, in the city of Des Moines, and that much coal was mined in that vicinity, not only by defendant, but by others.

3. SAME.

Defendant was denied the privilege of showing that there was a market price for coal at Coaldale, and what that market price was. This ruling was manifestly erroneous, and was due, no doubt, to the fact that the market price at Sioux City was regarded as controlling, no matter whether there was one at Coaldale or not. The trial court said that the market price at Sioux City governed the case, and not the market price at Coaldale. There was error, then, in the rulings on the admission of testimony bearing upon this proposition, and in the trial court's instructions relating to the same matter.

4. SAME:
evidence.

The trial court in its fourth instruction stated that the measure of damages was the difference between the market price at Sioux City and the contract price at Coaldale, plus

the cost of transportation from Coaldale to Sioux City at
the times when the coal should have been de-
livered. This, as we have already intimated,
was erroneous; but, if sound, the trial court erroneously de-
nied defendant the right to show the cost of transportation
from Coaldale to Sioux City. One part of the fourth in-
struction reads as follows:

5. SAME:
   instruction.

In arriving at the measure of damages, you will take
into consideration the number of tons of coal produced each
month, commencing the 1st day of September, 1904, and
ending the 1st day of May, 1905. You will also determine
the number of tons of coal of the character provided for in
the contract produced by the defendant during each month,
and the reasonable market value of the same in Sioux City,
Iowa, during such time, as shown by the evidence; and, after
so ascertaining the number of tons for each month, and the
reasonable market price thereof in Sioux City, Iowa, you will
ascertain and determine the difference, if any you find, be-
tween the market price at Sioux City, Iowa, and the price
provided in the contract which the plaintiff was to pay de-
fendant, to which you will add the transportation of the same
to Sioux City, Iowa, including the cartage thereof from the
cars to the bin. And, if you find that the market price at
Sioux City, Iowa, is greater than the price to be paid ac-
cording to the contract, including the transportation as be-
fore stated, you will return your verdict for the plaintiff for
such difference as you so find, if any, not exceeding the sum
claimed in plaintiff's petition, viz., $3,000.

This part of the instruction is not clear, and, as we
think, is either positively erroneous or so uncertain in its
terms as to confuse a jury. If the freight and cartage was
to be added to the contract price before striking the differ-
ence between the Sioux City market price and the contract
price, then, perhaps, the instruction would be correct were
we to adopt the theory entertained by the trial court as to
the place of the delivery of the coal. But, if the contract
price was to be taken from the Sioux City price, and freight
and cartage added to the difference, as part of the instruc-

tion would seem to indicate, then we are left at sea. The instruction is not clear, and, as it was predicated upon an erroneous view of the law, it should not have been given.

There was no specific claim in the petition for loss of profits which plaintiff might have made upon the coal; but the trial court permitted testimony as to retail values in
6. SAME:
market value:
evidence.

Sioux City to be given, over defendant's objections that the wholesale price alone should govern. This testimony was admitted, not for the purpose of showing loss of profits, but as fixing the market value of the coal. As plaintiff was a wholesaler and bought the coal not for sale in the retail market, but to dealers only, it is manifest that the market value was the wholesale price, and not the retail one, even if the Sioux City market were held to be the governing one. We are not now considering any question of loss of profits, for that is not the case. *Faulkner v. Closter, supra,* is not in point on this proposition, for there was no showing that the plaintiffs in that case were wholesalers, that they were buying for immediate sale, or that there was any other market than the one shown in that case. The true rule is announced in *Marsh v. McPherson,* 105 U. S. 709 (26 L. Ed. 1139), as the difference between the contract price and what it would have cost the buyer to have supplied himself by purchase from others with the same amount of articles of equal value. See, also, *Wehle v. Haviland,* 69 N. Y. 450. The retail price would of necessity give the buyer his profit on the transactions which might under some circumstances be allowed; but this retail price is not the one which fixes the price which the wholesale buyer who goes upon the market must pay. Upon the proposition of the right of plaintiff to recover loss of profits, we make no pronouncement, as that question is not before us. What we have said disposes of the controlling questions in the case, and there is no need for considering other propositions argued.

For the reasons pointed out, the judgment must be, and it is, *reversed.*