[L. A. No. 3145.   In Bank.—June 12, 1914.]

## F. C. GILFALLAN, Appellant, v. M. J. GILFALLAN, Respondent.

Specific Performance—Contract for Sale of Personal Property—
   Presumption of Adequacy of Legal Remedy — Inadequacy of
   Pecuniary Compensation.—Although there is a presumption, as
   declared by section 3387 of the Civil Code, that the breach of an
   agreement to transfer personal property can be adequately relieved
   by pecuniary compensation, and the general rule is that where ade-
   quate pecuniary compensation can be made, specific performance will
   not be enforced, and the party will be confined to his remedy at
   law for damages, still it is well settled in this state that such pre-
   sumption is a disputable one, and that where facts are alleged
   showing that pecuniary compensation will not afford adequate relief,
   the objection that an adequate remedy at law exists is removed and
   specific performance will, in proper cases, be enforced.

Id.—Contract for Sale of Stock in Oil Company—Uncertainty of
   Value—Inability to Purchase Other Stock.—Specific perform-
   ance of a contract for the sale of shares of stock in an oil company
   should be granted where it appears that, at the time of the execution
   of the contract, the corporation had no property except certain oil
   land, on which oil had not then been discovered and the value of
   which was speculative and uncertain; that the stock had no actual
   or market value and its value could be ascertained only on the dis-
   covery of oil in the land and in land adjacent thereto; that at the
   time the action was begun the stock had no fixed, certain, or reason-
   able market value, that it was owned and controlled by but a few

persons, that none of it was for sale, that its value was fluctuating and uncertain, and dependent upon the condition of the oil market from time to time and the development of said land and adjacent land, and that plaintiff cannot elsewhere obtain the amount of stock agreed to be sold to him by the contract, or any considerable portion thereof.

ID.—FAIRNESS OF CONTRACT—PAYMENT OF AGREED PRICE—CANCELLATION OF SELLER'S DEBTS—ADVANCEMENT TO MEET EXPECTED OBLIGATIONS.—Where no advantage was taken by the purchaser of the necessities of the seller, the contract for the purchase of the stock at the value placed upon it by both parties was not rendered unfair merely because the price was to be paid by cancelling the seller's present debts and by advancing part of the price to meet expected obligations of the seller which she otherwise could not pay.

ID.—CERTAINTY OF CONTRACT AS TO PRICE AND TIME AND MANNER OF PAYMENT.—The contract in question is construed and held not to be so uncertain either in regard to the price to be paid or the time and manner of payment as to render it incapable of specific performance.

ID.—TIME OF PAYMENT NOT SPECIFIED—PAYMENT AT DELIVERY IMPLIED. Where one buys personal property at an agreed price, he, by implication of law, agrees to pay the price, and if no time of payment is agreed upon, the law fixes the time of delivery as the time of payment. If the time of delivery is postponed until the occurrence of some act to be done by the seller, the time of payment, if not otherwise provided for, will be postponed, by implication of law, to the time of such delivery. This rule applies to cases where the time of payment of part of the price is specifically fixed and the time of the payment of the remainder is left unprovided for.

ID.—RIGHT TO DIVIDENDS UNDER EXECUTORY CONTRACT FOR SALE OF STOCK.—Under an executory contract to sell corporate stock, the buyer is not legally entitled to dividends upon the stock, in the absence of any agreement to that effect, until the legal title to the stock has passed to him.

ID.—PASSING OF TITLE UNDER EXECUTORY CONTRACT OF SALE.—Upon an executory agreement to buy and sell personal property, title does not pass to the buyer until delivery is made to him or is due to him and is offered to be made, unless there is something in the contract specifying or implying a different intention.

ID.—PLEADING PERFORMANCE BY BUYER OF CONDITIONS PRECEDENT.—In an action by the purchaser for the specific performance of a contract for the sale of personal property, an allegation in the complaint that the plaintiff has duly and faithfully complied with and performed each and all of the provisions of the contract on his part to be kept and performed, is, under section 457 of the Code of Civil Procedure, a sufficient allegation of all the conditions precedent to entitle him to demand performance of the defendant.

APPEAL from a judgment of the Superior Court of Kern County.     Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, for Appellant.

Rowen Irwin, Lamberson & Lamberson, and James M. Burke, for Respondent.

SHAW, J.—The plaintiff appeals from a judgment in favor of the defendant, given after sustaining a demurrer to plaintiff's amended complaint.

The object of the action was to obtain specific performance of a contract whereby the defendant agreed to sell to the plaintiff fifty thousand shares of stock of the Paraffine Oil Company, a corporation.     The oil company was made a party to the action, but it did not appear and the judgment runs in favor of M. J. Gilfallan alone.

1. The first point urged by respondent in support of the judgment below is that an action will not lie to enforce specific performance of a contract to sell personal property.     It is true, as is declared in section 3387 of the Civil Code, that there is a presumption that the breach of an agreement to transfer personal property can be adequately relieved by pecuniary compensation, and that the general rule is that where adequate pecuniary compensation can be made specific performance will not be enforced and the party will be confined to his remedy at law for damages.     But it is well settled in this state that the aforesaid presumption is a disputable one and that where facts are alleged showing that pecuniary compensation will not afford adequate relief, the objection that an adequate remedy at law exists is removed and specific performance will in proper cases be enforced. (*Treasurer* v. *Commercial M. Co.,* 23 Cal. 391; *McLaughlin* v. *Piatti,* 27 Cal. 463; *Senter* v. *Davis,* 38 Cal. 450; *Fleishman* v. *Woods,* 135 Cal. 260, [67 Pac. 276] ; *Wait* v. *Kern River M. Co.,* 157 Cal. 23, [106 Pac. 98] ; *Sherwood* v. *Wallin,* 1 Cal. App. 536, [82 Pac. 566].)     Here the complaint alleges that, at the time of the execution of the contract, the corporation had no property except forty acres of oil land, that no oil had then been discovered thereon and its value was specu-

lative and uncertain, that the stock of the company consisted of three hundred thousand shares of the face value of one dollar each, of which defendant owned one hundred thousand shares, that the stock had no actual or market value and its value could be ascertained only on the discovery of oil in the land and in land adjacent thereto; that at the time the action was begun the stock had no fixed, certain, or reasonable market value, that it was owned and controlled by but a few persons, that none of it was for sale, that its value was fluctuating and uncertain, and dependent upon the condition of the oil market from time to time and the development of said land and adjacent lands, and that plaintiff cannot elsewhere obtain the amount of stock agreed to be sold to him by the contract, or any considerable portion thereof. These circumstances remove the aforesaid presumption and bring the case within the rule declared in *Treasurer* v. *Commercial M. Co.*, 23 Cal. 391, where the court said: "In the peculiar condition of business and mining operations in this state, where numerous mining and other corporations are in existence, whose stock is often of fluctuating and uncertain value, and where certain kinds of stock have a peculiar value to those acquainted with their affairs, where the market value of stocks, if any they have, is often difficult to substantiate by competent evidence, and where the risk of the personal responsibility of individuals and corporations is so great, courts should be liberal in extending the full, adequate, and complete relief afforded by a decree of specific performance." The showing is sufficient to justify specific performance, so far as this objection is concerned.

2. It is next claimed that the contract is unfair. In view of the allegations of the complaint, we do not think this proposition can be maintained. The plaintiff had previously loaned to the defendant five thousand dollars to enable her to pay her share of the cost and expenses of acquiring the oil land afterward transferred to the corporation and comprising its entire assets, and to pay assessments previously made upon her shares of said stock. This debt had not been repaid to him. She had also borrowed $5,149.10 from one Minor and had pledged to him sixty thousand shares of her stock as security for that debt, which also was then unpaid. The corporation was engaged in drilling a well for the development of the land. It was, it is alleged, not known whether the oil land would

turn out to be valuable or valueless. The defendant had no means of her own and she feared that she would be unable to meet future assessments on her stock and would consequently lose it all. She urgently requested plaintiff to buy one-half of her stock on the terms stated in the contract and she was fully cognizant of all the facts above stated. The parties at that time estimated the value of the stock at twenty cents a share, which made the stock sold amount to a little less than the price stated in the contract. This being the situation of the parties, the agreement, in effect, was that the plaintiff would buy the fifty thousand shares at the price of $10,074.55, to be paid by canceling the defendant's debt of five thousand dollars owing to him, by his payment of $2574.55, being one-half of her debt to Minor, and by his payment of two thousand five hundred dollars in cash, delivery of 150 shares of the stock to be made at once and the remaining 49,850 shares to be delivered as soon as the Minor debt was paid by dividends received upon the stock, or at the expiration of eighteen months if the dividends did not sooner discharge said debt, and that in the meantime the sum of two thousand five hundred dollars was to be deposited to defendant's credit for her use in payment of any future assessments on the stock, if any should occur. There appears to be nothing unfair in a purchase of stock at the value placed upon it by both parties to be paid for by canceling the seller's present debts and by advancing part of the price to meet expected obligations of the seller which she otherwise could not pay. No advantage appears to have been taken of her necessities and we are satisfied that the contract cannot be deemed unfair in the sense here contended.

3. It is further claimed that the contract itself is so uncertain that it is incapable of performance. This uncertainty is asserted to be in regard to the price to be paid and the time and manner of payment. It is necessary here to set out the contract in full. It is as follows:

"This agreement, made and entered into this twenty-seventh day of October, 1908, by and between M. J. Gilfallan, of Bakersfield, Kern County, California, and F. C. Gilfallan, of Ebenezer, New York.

"Witnesseth: That whereas, M. J. Gilfallan is the owner of one hundred thousand (100,000) shares of the capital stock of the Paraffine Oil Company, situated in the Midway District,

Kern County, California, the estimated value of said stock being twenty thousand dollars ($20,000) ;

"And whereas, the said F. C. Gilfallan, has advanced to the said M. J. Gilfallan, at her special instance and request the sum of three thousand dollars ($3,000.00), and for other good and valuable considerations hereinafter set forth, the said M. J. Gilfallan agrees to sell to, and the said F. C. Gilfallan agrees to buy fifty thousand (50,000) shares of said Paraffine Oil stock from said M. J. Gilfallan, for the sum of ten thousand and seventy-four dollars and fifty-five cents ($10,074.55), said stock to be delivered to F. C. Gilfallan and to be paid for by him as follows:

"In addition to the sum of three thousand dollars ($3,000.00) already advanced to M. J. Gilfallan by F. C. Gilfallan, and the acknowledgment of an indebtedness of the further sum of two thousand dollars ($2,000) due the said F. C. Gilfallan from M. J. Gilfallan which said indebtedness shall be applied as a two thousand dollar ($2,000.00) payment on the purchase price of said stock. The said F. C. Gilfallan hereby further agrees to assume and pay one-half of the sum of five thousand one hundred and forty-nine dollars and ten cents ($5,149.10), (or the sum of $2,574.55), now due and owing to T. H. Minor from M. J. Gilfallan, under and by virtue of that certain agreement made and entered into by the said T. H. Minor and M. J. Gilfallan, and dated at Bakersfield, California, on August 13, 1907, and supplemented by an agreement between the same parties made on the eighteenth day of June, 1908, and to deposit the further sum of two thousand five hundred dollars ($2,500.00) to the credit of M. J. Gilfallan, and subject to her call, for the payment of future assessments which may be placed against said stock, and in consideration of the performance of the above covenants on the part of said F. C. Gilfallan, the said M. J. Gilfallan hereby agrees to deliver to the said F. C. Gilfallan one hundred and fifty (150) shares of said Paraffine Oil stock, at the time of the signing of this agreement, and to deliver to the said F. C. Gilfallan the remainder of said one-half of said stock (or 49,850 shares), when the said indebtedness of five thousand one hundred and forty-nine dollars and ten cents ($5,149.10) due to T. H. Minor, as above set forth, shall have been paid out of the dividends being received from said stock, and the said T. H. Minor shall have returned to the said M.

J. Gilfallan the 60,000 shares of Paraffine Oil stock held by him as collateral security for the payment of said sum of five thousand one hundred and forty-nine dollars and ten cents ($5,149.10) as evidenced by the above mentioned agreements heretofore made and entered into between T. H. Minor and M. J. Gilfallan.

"It is understood and agreed between the parties to this agreement that should the dividends now being paid on said 100,000 shares of stock, and now being applied to pay off the indebtedness of $5,149.10 due to T. H. Minor from M. J. Gilfallan be insufficient to pay off the said indebtedness within the period of eighteen months from this date, then the said M. J. Gilfallan agrees to immediately deliver the above mentioned 49,850 shares of said Paraffine stock to F. C. Gilfallan.

"It is further understood and agreed that all the covenants of this agreement shall bind the heirs and assigns of the respective parties."

There is no uncertainty as to the price to be paid. It is clearly stated to be $10,074.55. The manner of payment is in part fixed by the contract and in part left to implication of law. Considering the two together there is no uncertainty. The five thousand dollars due from defendant to plaintiff was to be applied upon the price. Plaintiff expressly agreed to assume and pay $2574.55, being one-half of the Minor debt under the terms of defendant's contract with Minor. This left two thousand five hundred dollars of the price, for the payment of which the contract made no provision. The deposit to her call was not declared to be a payment, but a deposit in trust for a specific purpose, that is, to meet future assessments. There having been no future assessments, the trust was left without any object. This, however, leaves no fatal uncertainty with respect to the payment of this remainder. Where one buys personal property at an agreed price, he, by implication of law, agrees to pay the price, and if no time of payment is agreed upon, the law fixes the time of delivery as the time of payment. (Civ. Code, secs. 1728, 1784, *Cole* v. *Swanston*, 1 Cal. 54, [52 Am. Dec. 288] ; *Blackwood* v. *Cutting Co.*, 76 Cal. 215, [9 Am. St. Rep. 199, 18 Pac. 248] ; *Veerkamp* v. *Hulburd*, 58 Cal. 230, [41 Am. Rep. 265] ; *Armsby Co.* v. *Blum*, 137 Cal. 556, [70 Pac. 669].) And if the time of delivery is postponed until the occurrence of some act to be done by the seller, the time of payment, if not other-

wise provided for, will be postponed, by implication of law, to the time of such delivery. (2 Mechem on Sales, secs. 1407, 1408, 1409.) This rule obviously applies to cases where the time of payment of part of the price is specifically fixed and the time of the payment of the remainder is left unprovided for. The payment of this two thousand five hundred dollars was therefore due when delivery of the stock was offered, or by the terms of the contract should have been offered.

The statement immediately succeeding the provision for the deposit, that "in consideration of the performance of the above covenants," the defendant agreed to deliver the stock as soon as it was released from the pledge, is not inconsistent with this construction. That clause refers only to the delivery of the stock. It does not affect the implied promise to pay on such delivery the part of the price then remaining unpaid.

Greater difficulty is found in ascertaining from the agreement and attending circumstances the intention of the parties with regard to the payment of one-half of the Minor debt. This sum of $2574.55 is necessary to make up the agreed price. The agreement to assume and pay it is clear, distinct, and entirely unqualified. It is not made to depend upon the circumstance, also appearing in the contract, that the dividends to be paid on the one hundred thousand shares of stock were to be applied to pay that debt. The fact that such dividends were to be so applied appears by way of recital in the clause specifying the time of delivery of the fifty thousand shares sold to plaintiff. Ten thousand shares of the fifty thousand shares sold to plaintiff were in Minor's custody under the pledge and could not be delivered, absolutely, until they were redeemed. Recognizing this, the contract provided that the entire delivery, except of one hundred and fifty shares, should await such redemption, unless the time should run beyond eighteen months, in which case delivery was to be made at the expiration of that time. The defendant's argument is that the recital that the remainder of the stock sold should be delivered when the $5149.10 due Minor "shall have been paid out of the dividends being received from said stock," and the subsequent reference to "the dividends now being paid on said one hundred thousand shares of stock and now being applied to pay off" the debt to Minor, are, in effect, an agreement that if the dividends proved to be sufficient to pay that debt,

the price to be paid by plaintiff was to be abated in the sum of $2574.55; in other words, that one-half of the dividends were to inure to the benefit of the plaintiff in the payment of the price, and that this is so contradictory of the previous express agreement that it renders the contract uncertain and consequently unenforceable. We do not think these recitals were so intended, or that, when considered in connection with the context, the circumstances stated, and the law on the subject, they should be so construed. The contract contains no statement that the plaintiff was to participate in the stock dividends prior to the delivery of the stock, or that he was to have any interest therein. Neither does it provide that title to the stock is to pass to him before delivery. In form it is not an executed agreement effecting a present sale of the property, but is an executory agreement to sell, the expression being that the defendant "agrees to sell" and that the plaintiff "agrees to buy." The buyer would not be legally entitled to dividends upon the stock in the absence of any agreement to that effect, until the legal title to the stock had passed to him. Upon an executory agreement to buy and sell personal property, title does not pass to the buyer until delivery is made to him or is due to him and is offered to be made, unless there is something in the contract specifying or implying a different intention, which is not the case here. (Civ. Code, sec. 1141; *Hallidie* v. *Sutter Street R. Co.,* 63 Cal. 576, 35 Cyc. 275.) The dividends paid to the pledgee would therefore inure entirely to the benefit of the defendant, in whom title was vested, and they would operate as a payment by her alone upon the debt to Minor. In contemplation of law, the plaintiff would not have paid anything on the Minor debt by virtue of these dividends. He would still remain bound by the terms of the contract to pay one-half of the amount thereof to defendant as a part of the agreed price. Under the rule mentioned in discussing the two thousand five hundred dollar payment, this payment of one-half of the Minor debt by the plaintiff, would become due and payable at the time of the delivery of the stock, since there is no provision for its payment at any other time. The payment thereof by the dividends made performance of the contract immediately possible and removed all uncertainty both as to the amount the plaintiff was to pay and as to the time and manner of such payment.

A further objection is made that the complaint does not show performance on the part of the plaintiff sufficient to entitle him to demand performance of the defendant. The complaint contains the allegation that the plaintiff has duly and faithfully complied with and performed each and all of the provisions of said contract on his part to be kept and performed. Under section 457 of the Code of Civil Procedure, this is a sufficient allegation of the performance of all the conditions precedent. The complaint further alleges a formal tender to the defendant of the full amount unpaid upon the contract and a readiness and willingness to pay all sums due upon delivery of the stock. These allegations we think sufficient to answer the objection. The court erred in sustaining the demurrer.

The judgment is reversed.

Melvin, J., Henshaw, J., and Lorigan, J., concurred.