REPUBLIC COAL COMPANY, Appellee, v. W. G. BLOCK COMPANY,
Appellant.

**SALES:** Cancellation of Contract—Divisible Contract. The rule that a party to a divisible contract may not *rescind* for a breach which does not go  to the entire consideration has no application to a divisible contract which carries the following clause, to wit: *"Noncompliance of buyer with any of the terms of this contract will entitle seller at its option at any time to cancel this contract, irrespective of failure to cancel for prior noncompliance.*

**CONTRACTS:** Cancellation—Effect of Waiver. The fact that a vendor has waived repeated breaches of the contract by the vendee, does not prevent the vendor from availing himself of a later violation *of the same kind as formerly waived by him,* when the written contract distinctly provides for a cancellation at any time for a breach, *"*irrespective of failure to cancel for prior noncompliances.*"*

*Appeal from Muscatine District Court.*—A. J. HOUSE, Judge.

NOVEMBER 14, 1922.

REHEARING DENIED FEBRUARY 17, 1923.

ACTION on a contract, to recover the purchase price of coal. Defendant counterclaimed for damages for failure to deliver the full amount provided for in the contract. The court directed a verdict for plaintiff for the amount claimed to be due, and dismissed defendant's counterclaim. Defendant appeals.—*Affirmed.*

*Jayne & Westrate* and *E. M. Warner,* for appellant.

*Alvin E. Stein* and *Thompson & Thompson,* for appellee.

FAVILLE, J.—The pleadings in this case consist of the plaintiff's petition and an amendment to the petition; an answer and counterclaim in two counts; the plaintiff's answer to defendant's counterclaim; a reply to plaintiff's answer to defendant's counterclaim; an amendment to plaintiff's answer to defendant's

counterclaim; a second amendment to plaintiff's answer to defendant's counterclaim; a third amendment to plaintiff's answer to defendant's counterclaim; an amendment to defendant's reply to plaintiff's answer to defendant's counterclaim; a fourth amendment to plaintiff's answer to defendant's counterclaim; an amendment to the amendment to plaintiff's answer to defendant's counterclaim.

These somewhat extensive and voluminous pleadings present the issues of a claim by the plaintiff to recover the balance of the purchase price of certain coal claimed to have been sold and delivered to the defendant by the plaintiff, under a written contract between the parties. The defendant, by counterclaim, seeks to recover damages for the failure of the plaintiff to deliver the full amount of the coal specified in the contract, at the contract price.

Plaintiff is a company engaged in the mining of coal at Jeffrey, Illinois. Defendant is a dealer in coal, having offices at several cities in Iowa. On the 15th day of March, 1919, the plaintiff, as seller, and the defendant, as buyer, entered into a written contract for the purchase and sale of certain coal. The contract provided that the coal was to be furnished during the period from April 1, 1919, to March 31, 1920, and contained the following provisions regarding the quantity, price, and delivery of the coal:

"25,000 tons Black Jeff 6" chunks, 3-6" furnace and 1½x3" small egg at price of $2.75 F.O.B. mines, less 15 cents per ton commission, and 25,000 tons of 1½" screenings at price of $2.05 F.O.B. mines, less 15 cents per ton commission. It is understood and agreed that·this coal should be taken practically in equal. monthly allotments, and so far as the prepared sizes, namely, chunks, furnace, and small egg are concerned, these shall be taken in about equal proportions as to their production at the Jeffrey mine, namely, 15 per cent chunks, 20 per cent furnace, and 20 per cent small egg. * * * The buyer agrees to remit in full on or before the 20th day of each month for all coal shipped during the preceding month. * * * Should production of available tonnage of coal herein contracted for, due to the above causes, prevent the seller from meeting all of ·its obligations, the buyer agrees to accept, as complying with agree-

ment during such period, such proportion of the available coal as buyer's orders under contract herein bear to such total obligations of the seller. The above conditions not to be applicable to, nor to entitle buyer to countermand or cancel shipments after the same have left mine. Noncompliance of buyer with any of the terms of this contract will entitle seller at its option at any time to cancel this contract, irrespective of failure to cancel for prior noncompliance.''

Other provisions in the contract are not material to the questions involved in this appeal.

After the parties entered into said contract, various shipments were made by the plaintiff to the defendant, from time to time, and various payments were made by defendant. There is no dispute between the parties in regard to these items, and it is admitted that there was due and owing for coal so shipped, the amount claimed in plaintiff's petition. The burden, therefore, rested upon defendant, to establish the allegations of its counterclaim.

The contract called for the delivery of 25,000 tons of ''Black Jeff'' chunk, furnace, and small egg coal, and 25,000 tons of screenings, to be taken practically in equal monthly allotments. The defendant pleaded that the plaintiff had failed to deliver, during the first six months of the contract, 5,241.23 tons of screenings, as required under the contract, and had failed to deliver any screenings during the last six months of the contract, and alleged that, with regard to the other kinds of coal mentioned in the contract, the plaintiff had failed to deliver 6,481.77 tons during the first six months of the contract, and had delivered none during the second half of the contract. The defendant claimed damages for such failure to deliver, in the sum of $5,982.52.

In answer to the counterclaim, the plaintiff pleads that, on or about the 22d day of September, 1919, it canceled the contract, for good cause. The plaintiff further alleged, as a defense to the counterclaim, that the defendant had failed, neglected, and refused to take and accept the coal contracted for, and that the plaintiff had delivered all of the coal ordered by the defendant. Defendant pleads that plaintiff waived its right to cancel the contract.

I.   The first question for our determination is whether or not the plaintiff had the legal right to cancel the contract on September 22, 1919, under the terms of the contract.

1. SALES: cancel-
lation of con-
tract: divisible
contract.

The contract by its terms did not definitely provide the exact method that the parties were to pursue, in operating under the contract. It provided that the coal "should be taken practically in equal monthly allotments," and contained a reference to "buyer's orders," in the event of a shortage in coal caused by labor troubles, floods, etc., but did not, in terms, state that defendant was to issue orders for the shipments.

The evidence shows, without conflict, that the method adopted by the parties in operating under the contract was that the defendant would order coal shipped to its various yards as it needed it. The amounts so shipped varied. It appears that there were two kinds of orders: one called "standard orders," and the other, orders for a specific number of tons, or cars, called "current orders." In the ordinary course of business, the time between sending the order and the receipt of the coal would be three or four days. Sometimes coal was shipped to the defendant when an order had not first been made. This occurred when plaintiff had coal which it wished to move, and it would request the defendant to receive the coal at that time, which defendant did. Sometimes the orders were given by telegram; but the majority of the time, the standard form of orders was used. Occasionally an order would be canceled and a new order given in its place. The method followed was to use the defendant's standard form of orders; and when coal was ordered by telegram or telephone, it was confirmed with the standard form of order later. The plaintiff shipped the kind and quantity of coal designated in these orders of the defendant, to the various points where the defendant directed the shipments to be made. No shipments were made by the plaintiff after the alleged cancellation of the contract, on September 22, 1919; nor were any orders sent by defendant thereafter.

By the terms of the contract, the defendant agreed to remit in full on or before the 20th day of each month, for all coal shipped during the preceding month. It is conceded by the defendant that it did not make remittances strictly in accordance

with the terms of the contract by remitting in full by the 20th of the month for all coal shipped during the preceding month. This failure on the part of the defendant to strictly comply with the contract in the matter of the remittances led to correspondence between the parties.

On May 15, 1919, the plaintiff wrote the defendant as follows:

"We are going to be rather short of funds this month, and if, for any reason, it is not convenient for you to remit us in full by May 20th for April coal, can you not arrange to send us a thirty-day note for any unpaid balance?"

On May 20, 1919, the plaintiff acknowledged receipt of a remittance, and said:

"The 10th and 20th of each month are heavy payment dates for us, and if you can arrange your payments so as to reach us on or before those dates, it will help us very much and we shall be very grateful."

On June 10th, the plaintiff wrote the defendant as follows:

"We are willing to overlook April and May as we appreciate, of course, that you were just getting started on our coal and that it naturally took you some time to get our coal introduced to your trade. Unless, however, we can get full tonnage from you during the months of June, July and August, your contract is not especially desirable as we do not expect to experience much trouble in disposing of our coal at full circular price after September 1st. We must accordingly insist that you give us orders during the next three months to cover full percentages as specified in contract."

On June 13th, the plaintiff wrote the defendant, acknowledging remittance to apply on the May account, and said:

"This leaves a balance of $5,297.92 owing on this account. Under the terms of your contract, this will be due on the 20th instant. Having some very heavy obligations to meet on that date, we shall appreciate it very much if you will forward check to cover so as to reach us not later than that date."

On June 26, 1919, the plaintiff wrote the defendant as follows:

"I have your valued favor of June 23d with reference to payments for coal purchased from us and in this connection

beg to advise that the contract existing between the Republic Coal Co. and the W. G. Block Co. is very specific in providing for the payment of all amounts due for shipments the previous month on the 20th of the month following. If you were making an effort to pay in accordance with the contract we could overlook failure to do so once in a while; but since we entered into this contract you have not lived up to the terms of the contract, either by taking the amount of coal required by the contract or by making payment for it in accordance with the terms of the contract. In other words you stand in default of all conditions of this contract at this time. Your letter seems to convey the impression that Mr. Miner has authority to set aside the terms of this contract and make new terms. We beg to advise that this is not true. No one has the right in the name of the Republic Coal Company to set aside any of the terms of a written contract. If your statement, however, as to payments under an alleged agreement with Mr. Miner was correct, it might make a difference in our attitude. You have not paid within thirty days all shipments of coal. At the time you wrote your letter on June 23rd, you owed us for coal shipped you on May 13th. Now we want to do business right, but we do not see any reason why we should extend particular favors to the W. G. Block Company. We have given them a very satisfactory contract from their standpoint and we shall expect you to live up to the terms of that contract fully, in which event we shall live up to the terms of the contract equally well. If for any reason you cannot live up to the terms of the contract, kindly advise us now and we shall take the necessary steps to protect all of our interests.''

To this letter the defendant made no reply, and it appears from the evidence that, after the sending of said letter, the defendant made payments to the plaintiff by weekly remittances of various amounts.

On July 24, 1919, the plaintiff wrote to the defendant, saying:

''Our interpretation of the contract is that you should take one twelfth of 25,000 tons of screenings each month and that you are entitled to one twelfth of 25,000 tons of prepared coal to be divided equally between lump, furnace and small egg each

month. Thus far you have apparently been ordering in accordance with the market conditions regardless of your obligation to us. * * * We want you to be fair in this transaction and give us orders for coal that you agreed to take under the terms of the contract. The month of July is the last month that we are going to neglect to enforce the terms of the contract.''

Considerable correspondence passed beween the parties, in an evident attempt to reconcile the accounts. On August 29, 1919, the plaintiff wrote the defendant:

''In this respect we have issued instructions to the mines to put all orders placed with us for August shipment to your concern in line for immediate attention and rest assured you will receive as much coal as is possible for us to send you on these orders this month. Trying to please everyone at this critical time is a hard problem, but rest assured, W. G. Block Company's orders are in line for immediate attention.''

On September 16, 1919, the defendant wrote the plaintiff as follows:

''You can realize our situation down here when you consider the fact that we have given you all of our summer tonnage, and that we have not received for our retail yard at Davenport a car of egg or lump coal for nearly two months. Please make an extra effort to give us four or five cars of lump coal for Davenport during the next few days, as we certainly need same.''

And again on September 18th, the defendant wrote the plaintiff, saying:

''We hope, therefore, that you will be successful in giving us some car numbers very quickly.''

On September 17th, the plaintiff wrote the defendant as follows:

''We have some very heavy obligations to meet on the 20th of this month. If you can let us have a substantial remittance on your August account to reach us on that date we will appreciate it very much indeed. May we count on your co-operation?''

On September 22, 1919, the plaintiff wrote the defendant a letter which it is claimed constitutes the cancellation of the contract, as follows:

"We beg to advise that owing to continuous default on the part of the W. G. Block Co., in fulfilling the terms of their contract with the Republic Coal Company, said contract having been entered into on the 15th day of March, 1919, we have this day canceled all orders at our mine and will not make any further shipments under the terms of said contract. We find you are in default under the item 'Terms and Conditions' which sets forth as follows: 'The buyer agrees to remit in full on or before the 20th day of each month for all coal shipped during the preceding month.' We find on the 20th day of September you were owing us $1,897.14 for all coal shipped in the month of August beginning with the 14th day of August until the 31st day of August inclusive, also previous items amounting to $205.66. We may say further in connection with this matter that you have been in continual breach of contract under the payment clause since the first payment became due on the 20th day of April and the breach was continued for such a length of time that we feel we have been damaged to a very large extent and have placed this matter entirely in the hands of our attorney."

The defendant contends that, after the receipt of said letter, he made a demand, by telephone, upon the manager of the plaintiff company, insisting on performance of the contract. He says:

"I made a demand on them for the coal. I said we wanted the coal that was coming to us."

The manager said that the plaintiff would not ship any more coal. No more coal was shipped after said time, nor does it appear that any orders were sent to the plaintiff, nor that any further demand was made for the shipment of coal after said date.

Defendant contends that the contract for the delivery and payment of the coal in installments is a severable contract, and that a failure by the defendant to make payments in exact accordance with the terms of the contract as to time of payment, will not warrant or justify a cancellation or rescission of the contract on the part of the plaintiff. In *Tuttle-Chapman Coal Co. v. Coaldale Fuel Co.*, 136 Iowa 382, there was a contract for the purchase and sale of coal; and the contract provided that

payment was to be made monthly for all coal shipped in any one month, not later than the 10th of the following month. We held that such a contract in its nature is divisible, and that the seller had no right of cancellation because of plaintiff's failure to pay for the coal as delivered, according to the exact terms of the agreement as to time of payment.

See, also, *Hansen & Linehan v. Consumers' Steam Htg. Co.,* 73 Iowa 77; *Osgood v. Bauder & Co.,* 75 Iowa 550; *Myer & Dostal v. Wheeler & Co.,* 65 Iowa 390; *Quarton v. American Law Book Co.,* 143 Iowa 517.

It is contended, however, in behalf of the plaintiff, that the rule recognized in these cases has no application to the facts in the case at bar, because of the peculiar wording of the contract; and that the rights of the parties in this case are fixed and determined by the terms of the contract, which expressly gave to the plaintiff the right to cancel. The right of a party to a contract to abrogate or cancel the same by virtue of the terms of the contract should not be confused with the general legal right of rescission which a party may have where certain conditions recognized by the law as giving that right are shown to exist. The contract in this case contains this clause, upon which the plaintiff relies:

"Noncompliance of buyer with any of the terms of this contract will entitle seller at its option at any time to cancel this contract, irrespective of failure to cancel for prior noncompliance."

This language is comprehensive. It was adopted advisedly by the parties, as a part of their written agreement. The rights of the parties are to be governed by the terms of the contract. The plaintiff does not claim the right to rescind the contract by virtue of the general rules of law pertaining to rescission of contracts. It stands squarely upon the terms and conditions of the written contract, and claims, not the general legal right of rescission, as in the cited cases, but the specific right of cancellation as provided in the written instrument.

Looking to the language of the written instrument, we find that the paragraph in question contains three provisions, as follows: (1) The seller is entitled, at its option, to cancel the contract for noncompliance by the buyer with any of its terms.

(2)   This right of cancellation may be exercised by the seller *at any time.* (3)   The right to cancel the contract for noncompliance with the terms is given to the seller "irrespective of failure to cancel for prior noncompliance." There is nothing illegal about such provisions in a contract, and competent parties have a perfect right to enter into a contract of this character, and are bound by its terms and conditions.

Where the parties have entered into a contract providing for the annulment thereof at the option of one party, and on certain conditions, the courts will enforce the contract in this particular, the same as in any other respect, and in exact accordance with the rights of the parties, as fixed by their agreement. *King v. Towsley,* 64 Iowa 75; *White Co. v. Remick & Co.,* 198 Mass. 41 (84 N. E. 113) ; *Cadillac Mach. Co. v. Mitchell-Diggins Iron Co.,* 205 Mich. 107 (171 N. W. 479) ; *Schwab v. Baremore,* 95 Minn. 295 (104 N. W. 10) ; 13 Corpus Juris, Section 631.

The case of *Southern Coal & Coke Co. v. Bowling Green Coal Co.,* 161 Ky. 477 (170 S. W. 1185), is quite like the case at bar. In that action, the contract provided for the sale of coal in installments, and contained the following clause:

"A failure to pay when due any account for coal shipped under this order renders this order, as to all further shipments, subject to cancellation at any time thereafter, at the option of the shipper. All coal shall be paid for on the 10th of the month immediately following the month in which shipment is made."

The court said:

"We have seen that, under the express terms of the contract, for a breach of which appellee is suing, appellant reserved the right to cancel the same as to all further shipments of coal where the coal already shipped had not been paid for on the 10th of the succeeding month."

The evidence showed that the appellee did not mail a check for the August shipment until the 11th of September, and that appellant, on the 15th of September, notified him that it would decline to make further shipments. The court said:

"Whether that action was taken alone because of his delay in paying for the August shipment, or whether it was taken for other reasons, or for that reason combined with others, cannot be

considered. It was acting within its express rights reserved in the contract, and courts are not authorized in such cases to inquire into its motives.''

In the case at bar, we are constrained to hold that, under the terms and provisions of the contract, the plaintiff had the right to refuse to make further shipments and to cancel the contract at any time that it saw fit so to do, when the defendant was in default for noncompliance with the terms of the contract. The general rules applicable to rescission of contracts do not apply under the terms and provisions of the written contract in this case, and it was not incumbent upon the plaintiff to restore the *status quo* before it could cancel the contract, nor was it incumbent upon the plaintiff to first show that it had fully complied with all of the terms and conditions of the contract on its part, and was not in default, before it could declare such cancellation.

It is contended in behalf of defendant that the plaintiff had not, at the time of the cancellation, shipped all of the coal of the kind and quantity ordered by the defendant; and, on the other hand, it is contended by the plaintiff that the defendant had not ordered coal of the various kinds specified in the contract, in the proportions contemplated by the contract, but had ordered for shipment coal which it was most advantageous to the defendant to receive, and had not complied with the contract in the matter of issuing the orders. There is no claim whatever that the plaintiff acted fraudulently in any manner, in serving the notice of cancellation of the contract.

As before pointed out, the plaintiff is not seeking to rescind the contract. The ordinary rules of rescission are not applicable here. Admittedly, the defendant was in default for nonpayment under the contract, for coal actually received. It had likewise failed to order the amounts and kinds of coal contemplated to be shipped monthly under the contract. Plaintiff could not ship without such orders. Under the terms of the contract, it was the duty of the defendant to fully perform the conditions of the contract on its part, at the risk of a cancellation of the contract, at the option of the plaintiff, for such noncompliance. This is the condition of the written instrument, and by it the defendant must be bound.

II.  Was the defendant in default for noncompliance with the contract, at the time the plaintiff gave notice of cancellation, on September 22, 1919?

Under the terms of the contract, the defendant agreed to remit in full on or before the 20th day of each month, for all coal shipped during the preceding month.  We have set out excerpts from the correspondence between the parties in regard to this matter.  It is evident therefrom that the parties had considerable correspondence, even from the beginning of the contract, with regard to the payment of the shipments of coal made by the plaintiff.  Frequent complaint was made of the delay of the defendant in remitting for the coal that had been shipped.  At the time of the cancellation of the contract, on September 22, 1919, it is clear that the defendant was in default for noncompliance with the contract in remitting for the shipments previously made in the month of August, which remittance, under the terms of the contract, was due September 20th.  The evidence is uncontradicted that the defendant had failed to remit for the August shipments on or before the 20th of September, as required by the contract; and for that reason the plaintiff was entitled, under the strict terms of the contract, to cancel the same at its option, because of the defendant's noncompliance, unless, for some valid reason, it was not in position to assert such right.

III.  It is urged, however, that the plaintiff had waived strict compliance with the contract on the part of the defendant, and therefore could not avail itself of the right to cancel the contract for such noncompliance.

2. CONTRACTS: cancellation: effect of waiver:  The difficulty with this contention on the part of the defendant, however, is twofold.  In the first place, the contract itself expressly provides that it may be canceled for noncompliance, irrespective of failure to cancel for prior noncompliance; and secondly, even if there had been previous waiver of compliance, there was no waiver of compliance with the amount due for the August shipment, which amount became due September 20th.

On July 24th, the plaintiff wrote to the defendant:

"The month of July is the last month we are going to neglect to enforce the terms of the contract."

On September 17, 1919, the plaintiff wrote to the defendant:

"We have very heavy obligations to meet on the 20th of this month. If you can let us have a substantial remittance on your August account to reach us on that date we will appreciate it very much indeed. May we count on your co-operation?"

No remittance having been received from the defendant, on September 22d the letter of cancellation was sent.

Even if there had been a waiver of strict conformance with the terms of the contract on the part of the defendant in making previous remittances, there was no waiver on the part of the plaintiff of the remittance due September 20th. On the contrary, there was notice to the defendant that the plaintiff expected remittance by that date for the amount due. If the plaintiff had waived compliance with the requirements in regard to prior payments, under the language of the contract itself this would not constitute a waiver of the right to cancel for failure to make the payment due September 20th. The contract, by its express terms, provides that the contract may be canceled at *any* time for noncompliance, "irrespective of failure to cancel for prior noncompliance."

The undisputed evidence shows also that the defendant was not only in default in failing to conform with the terms of the contract in the matter of payments, but also that it was in default in the matter of giving orders for the shipment of coal, as required by the contract, of which default plaintiff had made complaint. In the letter of September 22d, the plaintiff advised the defendant that, "owing to continuous default on the part of W. G. Block Company in fulfilling the terms of their contract with the Republic Coal Company," the said contract was canceled. We think it quite evident that this letter, taken in connection with the previous correspondence between the parties, above set forth, shows that the plaintiff was exercising its right to cancel the contract because of the failure on the part of the defendant, not only to make the payments at the time required by the contract, but also to order the kind and quantity of coal required under the contract. The parties had made this contract freely and voluntarily, in their own way. The plaintiff was within its rights, under the terms and provisions of this contract, in canceling the same on September 22, 1919. If the

terms of the contract appear to be harsh, it can only be said that parties fully capable of executing such a contract have voluntarily entered into it; and there is no claim of fraud, mistake, or overreaching. The contract having been legally terminated on September 22d, the defendant was not entitled to recover from the plaintiff, under the allegations of defendant's counterclaim.

The trial court was not in error in directing a verdict for the plaintiff on the issues presented by defendant's counterclaim, and the judgment must be—*Affirmed*.

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.